IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM BERRY,

        Plaintiff,

      vs.                                    Civ. No. 24-52 JFR/SCY

MERRICK GARLAND, in his Official Capacity
as United States Attorney,

        Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on two motions. Defendant filed a *Motion for Summary Judgment or Alternatively Motion to Dismiss Certain Claims* ("Defendant's *Motion*") on May 6, 2024. Doc. 22. On June 6, 2024, Plaintiff both responded in opposition (Doc. 25), and filed a *Motion for Limited Discovery* (Doc. 28). Both Motions before the Court are fully briefed and ripe for decision. Docs. 48, 54. Having considered counsel's arguments, the record, and the relevant law, the Court first finds that Plaintiff's *Motion for Limited Discovery* is not well-taken and is thus **DENIED**. The Court further finds merit in Defendant's arguments for summary judgment. Therefore, the Court finds Defendant's *Motion* is well taken and is **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiff William Berry brings this suit against Merrick Garland in his official capacity as Attorney General of the United States of America. Doc. 17. This case arises out of Plaintiff's employment with the Farmington, New Mexico Resident Agency of the Federal Bureau of

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. Docs. 11, 16, 18.

Investigation ("FBI"). *Id.* The *Amended Complaint* states three claims for relief under Title VII: marital and racial discrimination, retaliation, and hostile work environment. *Id.* at ¶¶ 97-110.

On May 6, 2024, Defendant filed a *Motion for Summary Judgment or Alternatively Motion to Dismiss Certain Claims* ("Defendant's *Motion*"), which listed 32 undisputed material facts. Doc. 22 at 3-8. On June 6, Plaintiff responded in opposition (Doc. 25), and then filed a *Motion for Limited Discovery* (Doc. 28). Both filings address Defendant's listed facts. Docs. 25, 28. Plaintiff stated that facts 1-18, 22-24, 27, 28, 30, and 32 are undisputed. Doc. 25 at 3. However, Plaintiff "disputed" facts 6, 19-21, 25, 26, and 29. Doc. 25 at 3-4. Plaintiff does not dispute the dates or substance of these facts, but rather their legal significance. In doing so, Plaintiff supplemented and added information that does not dispute the material facts. Doc. 25 at 4-9.

On August 8, 2024, Defendant first replied in support of his *Motion*, and then filed a response in opposition to Plaintiff's *Motion for Limited Discovery*. Docs. 38, 39. On August 21, 2024, Plaintiff replied in support of the *Motion for Limited Discovery*. Doc. 47. Plaintiff filed a surreply on August 30, 2024, as did Defendant on September 23, 2024. Docs. 49, 53. Thus, both Defendant's *Motion* and Plaintiff's *Motion for Limited Discovery* are ripe for decision. Docs. 48, 54.

## II. <u>LEGAL STANDARD</u>

### A. <u>Motion to Dismiss</u>

Fed. R. Civ. P. 12(b)(6) provides that a party may assert—by motion—the defense of failure to state a claim upon which relief can be granted. In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555-56 (2007). While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). However, pleadings offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, internal quotation marks, and citation omitted). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted). Moreover, the Court may take judicial notice of its own files and records in deciding this type of motion. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006). Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines. *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

B. **Motion for Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c). Rule 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record… or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); *see also* D.N.M. LR-Civ 56.1(b).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis excluded). To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "Instead, the movant only bears the initial burden of ''showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 325).

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002); *see also Applied Genetics Int'l v. First Affiliated Secs.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Likewise, "only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief." *West v. Norton*, 376 F. Supp. 2d 1105, 1118 (D.N.M. 2004) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997). If there is no genuine issue of material fact in dispute, then a court must determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## C. **Motion for Limited Discovery**

Rule 56(d) of the Rules of Civil Procedure provides that if a nonmovant shows by affidavit or declaration that it cannot present facts essential to justify its opposition, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The non-movant has the burden of showing that additional discovery is necessary. *Martin v. Cnty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015). The decision of whether to grant a Rule 56(d) motion lies within the court's sound discretion. *Jensen v. Redev. Agency of Sandy City*, 998 F.2d 1550, 1553-54 (10th Cir. 1993); *see also, e.g.*, *Trask v. Franco*, 446 F.3d 1036, 1041-42 (10th Cir. 2006) (district court did not abuse discretion in denying additional discovery where Rule 56(f) affidavits neither identified any "probable facts not available," nor stated with specificity how the additional material would rebut qualified immunity motion) (citation omitted).

A Rule 56(d) declaration must meet four requirements. *Valley Forge Ins. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010); *see also Cerveny v. Aventis, Inc.*,

855 F.3d 1091, 1110 (10th Cir. 2017).  First, the declaration must identify "the probable facts not

available," and second, the declaration must state "why those facts cannot be presented

currently." *Valley Forge*, 616 F.3d at 1096 (citation omitted).  While exclusive control by the

movant over the needed information weighs in favor of granting Rule 56(d) relief, exclusive

control is just one factor and does not grant automatic relief.  *Price v. W. Res., Inc.*, 232 F.3d

779, 783-84 (10th Cir. 2000).  Third, the declaration must specify "what steps have been taken to

obtain these facts." *Valley Forge*, 616 F.3d at 1096 (citation omitted).  Fourth, the declaration

must explain "how additional time will enable [the party] to obtain those facts and rebut the

motion for summary judgment." *Id.* (internal quotation marks omitted).  "A party may not

invoke Fed. R. Civ. P. 56[(d)] by merely asserting that discovery is incomplete or that specific

facts necessary to oppose summary judgment are unavailable.  Rather, the party must

demonstrate precisely how additional discovery will lead to a genuine issue of material fact."

*Ben Ezra, Weinstein, & Co., v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (internal

citations omitted) (citing *Jensen*, 998 F.2d at 1554).  "Rule 56[(d)] does not require, however,

that summary judgment not be entered until discovery is complete." *Trujillo v. Bd. of Educ. of

the Albuquerque Pub. Schs.*, Nos. 02–1146, 03–1185, 2007 WL 2461629, at *3 (D.N.M. June 5,

2007) (citing *Price*, 232 F.3d at 784).

## III. UNDISPUTED MATERIAL FACTS AND RELEVANT FACTUAL BACKGROUND

The FBI employed Plaintiff William Berry, a biracial (White and African American

(Doc. 22-2 at 4)) male, as a Special Agent ("SA") from July 10, 2017, until his resignation in

2023.  Doc. 17 at ¶¶ 7-8, 94.  Berry's wife, SA Alyson Berry ("SA Berry"[2]), joined the FBI in

December 2020 and remains employed by the FBI.  *Id.* at ¶¶ 10, 27.  In June 2020, Plaintiff was

---

[2] For purposes of clarity, Alyson Berry will be referred to as SA Berry and William Berry will be referred to as Berry
or Plaintiff.

a member of the FBI unit that "took a knee" during the Black Lives Matter ("BLM") protest in

Washington, D.C. *Id.* at ¶ 11. Shortly thereafter, the FBI transferred Plaintiff to the Bureau's

Resident Agency ("RA") Office in Farmington, New Mexico. *Id.* at ¶¶ 13. Plaintiff arrived at

the Farmington RA on or around August 10, 2020. *Id.* at ¶ 19. SA Berry later joined Plaintiff at

the Farmington RA in December 2020. *Id.* at ¶ 27. William Hall served as the Farmington RA

Supervisory Special Agent ("SSRA") from June 2020 until his retirement in June 2022. *Id.* at ¶¶

14, 76. After Hall's retirement, Kalon Fancher became the new Farmington SSRA. *Id.* at ¶ 76.

### A. Plaintiff's Amended Complaint

Plaintiff's *Amended Complaint* alleges a variety of events underlying his three claims of

discrimination, retaliation, and hostile work environment. *See* Doc. 17. Specifically, Plaintiff's

*Amended Complaint* lists four discriminatory adverse employment actions, five retaliatory

adverse employment actions, and two perpetrators of a hostile work environment. *Id.* at ¶¶ 31,

92-93, 99, 107, 110. Importantly, however, multiple accusations listed in the *Amended*

*Complaint* were not previously raised in Plaintiff's EEO Complaint. *Compare* Doc. 17, *with*

Doc. 22-10. As later explained, time-barred allegations are not within the court's purview and,

therefore, not described or analyzed in extensive detail. *See Norton*, 376 F. Supp. 2d at 1127

(refusing to analyze all but the singular allegation of adverse employment that was not time-

barred).

### B. OEEOA and INSD

Much of this case focuses on distinguishing the Office of Equal Employment Opportunity

Affairs ("OEEOA") from the Inspection Division ("INSD"), two separate departments in the

FBI. While both receive complaints and conduct investigations regarding discrimination and

retaliation, each has distinct purposes and processes. *See* Docs. 22-4, 38-5 at 5-9, 26-6 at 10-19.

Although FBI Harassment Policy 1038D provides employees the option to report harassment directly to INSD, the policy specifically requires that employees who wish "to file a formal EEO Complaint about offensive conduct must contact an EEO counselor within 45 days of the occurrence or knowledge of the offensive conduct."  Doc. 38-6 at 4 (§ 5.4.2); *see also* Docs. 38-7 at ¶¶ 4-8, 38-8 at ¶¶ 7-10.  FBI policy also explains that when the OEEOA determines that Section 5.1.1 (defining harassment) is met, the OEEOA will make a referral to INSD.  Doc. 38-6 at 3 (§ 5.3.3.1).  However, nowhere does the applicable policy state that the INSD will refer its complaints to the OEEOA.  Doc. 38-6; *see also* Doc. 38-7 at ¶ 11.  Hence, it is undisputed that reporting harassment to INSD does not initiate or satisfy the timely exhaustion of administrative remedies required before bringing a federal claim pursuant to Title VII.  Docs. 38-8 at ¶¶ 6-10, 38-7 at ¶¶ 4-10.

When an employee files a formal Equal Employment Opportunity ("EEO") Complaint, the OEEOA will acknowledge receipt of it and begin an impartial investigation of the claims.  29 C.F.R. § 1614.106(e); *see also* Docs. 22-3 at 2, 22-10 at 1.  OEEOA provides informal and formal resolution processes to redress employees subjected to discrimination and/or retaliation.  Doc. 22-4 at 2.  The resolution process that OEEOA carries out provides individual employees with redress for being the victim of discrimination and retaliation.  *See* Docs. 38-2 at 2-4 (outlining an EEO complainant's rights during the EEO process), 38-6 at 3-4 (listing harassment remedies following an EEO Complaint), 22-3 at 2 (portion of Plaintiff's EEO Complaint describing the EEO process), 26-2 at 80-81 (acknowledging receipt of Plaintiff's EEO Complaint, describing the EEO process, and informing that if Plaintiff wishes to pursue an informal resolution, mediation may be requested).  Particularly, an aggrieved employee may request and obtain equitable remedies and damages during the EEO administrative process.  *See*

9

Docs. 27 at 7, ¶ 19 (describing the FBI's request for Plaintiff's remedies during the EEO

interview), 26-2 at 108 (Plaintiff's signed sworn statement listing remedies requested from the

EEO process).  Once the investigation of the EEO Complaint is completed, the aggrieved

employee will have an opportunity to request a final agency decision by the Department of

Justice's Complaint Adjudication Officer or a hearing before an EEOC judge.  Docs. 22-3 at 2,

22-10 at 3.

   Karen Corado is the Unit Chief of the Complaints Processing Unit within the FBI's

OEEOA.  Doc. 38-8 at 1, ¶ 1.  Unit Chief Corado explained, "[e]mployees are advised about the

time limits through the mandatory No Fear Act training, other training provided by OEEOA and

the employee's Field Office or Division, and posters hung throughout the FBI in each Field

Office and Division."  *Id.* at ¶ 4.  Plaintiff completed four "No Fear Act" trainings in November

2018, December 2020, December 2022, and June 2023.  Docs. 22-7 at 2-4, 22-1 at ¶¶ 4-5, 11-12.

These trainings explicitly state that an "[a]ggrieved individual must contact the FBI's OEEOA

within forty-five (45) days of the allegedly discriminatory action(s).  Failure to contact the

OEEOA within 45 days of the allegedly discriminatory action(s) may result in a procedural

dismissal of the Aggrieved individual's formal complaint of discrimination during the formal

complaint process."  Doc. 22-4 at 3 (emphasis in original).

   Alternatively, INSD investigates employee misconduct and criminal activity, and

subsequently refers cases to the Office of Professional Responsibility ("OPR") for adjudication.

Docs. 38-5 at 5, 7-8, 26-6 at 10.  Together, INSD and OPR promote and enforce disciplinary

policies and practices.  Docs. 38-5 at 5 (describing INSD's Roles and Responsibilities), 26-6 at

10 (§ 2.1 describing OPR's role).  As demonstrated by INSD's and OPR's procedures, they

provide no recourse for a person asserting allegations of discrimination and retaliation.  *See* Doc.

26-6 at 14-16. Instead, the entire process within these two divisions is focused solely on whether the allegations of misconduct are substantiated and, if so, what discipline will be imposed. *Id.* FBI employees must report misconduct to their supervisors, INSD, or the Department of Justice Office of the Inspector General ("DOJ OIG"). Doc. 26-6 at 14 (§ 4.1). The Initial Processing Unit ("IPU") of INSD evaluates misconduct complaints and determines the initial course of appropriate action in addressing and responding to those allegations. Doc 38-7 at 1, ¶¶ 1, 3; *see also* Doc. 38-5 at 5 (§ 2.2.1). The Internal Affairs Section ("IAS") of INSD "review[s] all allegations of employee misconduct [reported to the IPU] to determine whether an investigation is warranted . . . . If an investigation is warranted, an administrative inquiry will be opened and INSD IAS or DOJ OIG will investigate the matter." Doc. 26-6 at 14 (§ 4.2).

### C. **Complaints to INSD**

On March 16, 2021, SA Nicole Montgomery anonymously reported Plaintiff and SA Berry to the IPU of the INSD's IAS for allegedly misappropriating government funds designated for a house hunting trip in June 2020 when the Berrys had already purchased a home. Docs. 26-2 at 41, 26-5 at 69. Later that month, OPR notified Plaintiff that he was being investigated for misusing travel benefits. Doc. 17 at ¶ 31. IPU followed the standard procedure of evaluating the complaint, completing basic database research as appropriate, and reviewing relevant records. Doc. 26-2 at 41. After this process, IPU Unit Chief Heather Butters found a preponderance of evidence for recommending that the IAS open an administrative investigation on potential violations of the FBI Offense Codes 2.2 False Misleading Information on Fiscal Matters. *Id.* at 42. This recommendation was reviewed and approved by Unit Chief Butter's superior, Section Chief Alicia Corder, and then transferred to the INSD's International Investigation Unit, which

initiated an IAS administrative investigation on May 24, 2021, lasting through the end of 2022. *Id.*

While this investigation was pending, Plaintiff made two complaints against SSRA Hall to the INSD.  On August 26, 2021, Plaintiff first reported SSRA Hall in an email titled "Hate Speeches by SSRA William 'Bill' Hall."  Doc. 27-1 at 8-11.  Plaintiff then followed up with a second report in an email titled "Hate Speech Part II" on September 17, 2021.  *Id.* at 12-13.  Two to three weeks later, Plaintiff followed up by phone call and was informed that his additional complaint started the OPR process over again.  Doc. 26-2 at 105.

### D.  Plaintiff's Complaint to OEEOA

On or around January 7, 2023, Plaintiff received a letter (dated January 6, 2023) from Ben L. Beyers, the Unit Chief of OPR's Adjudication Unit.  Docs. 27-1 at 14-31, 26-2 at 49.  In this letter, Unit Chief Beyers described his determination that the circumstances—in light of precedent, penalty guides, and the 12 nonexclusive *Douglas Factors* for assessing disciplinary reasonability—warranted dismissing Plaintiff from the FBI.  Doc. 27-1 at 14-23; *see also Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981).  In response, Plaintiff contacted an EEO Counselor on January 11, 2023, with an email titled "Discrimination Complaint."  Docs. 27-1 at 2,22-8.

During the initial EEO process, Plaintiff received written notification of his rights and responsibilities twice.  On January 13, 2023, EEO Counselor Marie Malozzi (formerly known by her maiden name, Kuchay) conducted her initial interview with Plaintiff and emailed him the FBI's "Written Notification" form, which explained his rights and responsibilities, including which claims could be raised in a subsequent complaint.  Doc. 38-2.  Plaintiff signed this document on January 23, 2023.  *Id.* at 1.  Of particular relevance, the document states: "Only the

claims raised during the informal EEO process or claims which are like and related to those claims may be the subject of a formal EEO Complaint or an amendment thereto." *Id.*; *see also* 29 C.F.R. § 1614.105(b)(1) ("Counselors must advise individuals in writing of their rights and responsibilites including . . . that only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency."). Counselor Malozzi then interviewed Plaintiff on January 25, the details of which were captured in Counselor Malozzi's Report of Counseling.[3] Doc. 22-2. Counselor Malozzi's role as an EEO counselor concluded on February 3, when she emailed Plaintiff and his counsel the EEO Program's "Notice of Right to File a Discrimination Complaint," which again informed Plaintiff of the procedures, as well as his rights and responsibilities.[4] Docs. 38-3, 38-4.

When Plaintiff subsequently filed his formal discrimination complaint on February 10, 2023, he was informed of his rights and responsibilities two more times. On February 14, Corado, who was then serving as the Acting Assistant Director of the EEO, emailed Plaintiff and his lawyer a letter acknowledging receipt of Plaintiff's formal EEO Complaint. Doc. 26-2 at 80-82. The letter explained the processes and included the "Notice of Rights and Responsibilities" form. *Id.* In a separate letter (*id.* at 84-88) emailed to Plaintiff and his lawyer, Corado listed the following ten allegations for official investigation: (1) "In June 2020 [SSRA Hall] said that 'all [Black Lives Matter] protestors should be killed,' and that complainant should not consider working in the Farmington, New Mexico, Resident Agency if he 'did not 'vote right.''" *Id.* at

---

[3] Malozzi testified that she mistakenly typed "October 4, 2022" as the interview date on the Report of Counseling (Doc. 22-2 at 32). Docs. 22-8 at ¶¶ 9-12, 38-1 at ¶ 7.

[4] Plaintiff was represented by counsel almost entirely throughout the EEO process, as early as January 30, 2023, seeing as Plaintiff copied his attorney on his email correspondence with Malozzi that day. Doc. 27-2 at 2.

85. (2) "In or around August or September 2020 [SSRA Hall] said that '[B]lack people need to get over racism.'" *Id.* (3) "In November 2020 [SA Aaron Carp] asked if [Plaintiff] was part of 'Kneel Team Six,' and said that any SAs who 'kneeled during the [Black Lives Matter] protests should have been kicked out of the FBI.'" *Id.* (4) "In or around early 2021 [Plaintiff] learned he had been referred to the Inspection Division for alleged WebTA fraud and was being investigated." *Id.* (5) "Between May 2021 and March 2022 [SSRA Hall] made a number of offensive and disparaging comments about Native Americans, certain religious groups, and gay individuals." *Id.* (6) "In or about October 2021 [SSRA Hall] called [Plaintiff] a 'fucking coward.'" *Id.* (7) "On an unspecified date [SA Montgomery] told the squad that [Plaintiff] 'was one of the kneeling agents in Washington DC during the [Black Lives Matter] protests.'" *Id.* (8) "In or around October 2022 [SSRA Hall] 'bragged … about disowning his [W]hite daughter until she broke up with her [B]lack boyfriend.'" *Id.* at 86. (9) "On or about January 7, 2023, [Plaintiff] received a letter of proposed removal." *Id.* (10) "On or about January 17, 2023, [(then retired) SSRA Hall] told a group of employees that he had identified the complainant as one of several individuals 'who had provided complaints against him.'" *Id.* After listing these issues accepted for investigation, Corado explained Plaintiff's rights and responsibilities again. *Id.* at 84, 86-88. Plaintiff did not make any amendments to his EEO Complaint or dispute any of the ten issues approved for investigation. Doc. 22-1 at ¶¶ 6-8.

## IV. <u>ANALYSIS</u>

### A. <u>The Motion for Limited Discovery is Denied for a Lack of Probability, Necessity, or Relevance</u>

Before analyzing Defendant's *Motion* (Doc. 22), the Court must first respond to Plaintiff's *Motion for Limited Discovery*. Doc. 28. It is solely within the trial court's discretion to determine whether additional discovery will be permitted under Rule 56(d) of the Federal

Rules of Civil Procedure. *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984). Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for *specified* reasons, it cannot present facts *essential* to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (emphasis added). Furthermore, these asserted inquiries must be relevant, specific, and probable; not argument, speculation, or opinion. Fed. R. Civ. P. 56(c); *Adams v. C3 Pipeline Constr., Inc.*, 30 F.4th 943, 968-70 (10th Cir. 2021). Parties must support their assertions by "(A) citing to particular parts of materials in the record… or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also* D.N.M. LR-Civ 56.1(b).

Plaintiff lists the following five inquiries into: (1) the application and interpretation of the FBI's OPR and Harassment policies; (2) whether EEO Counselor Malozzi fulfilled her required counseling goals; (3) whether FBI policy required Malozzi to ask follow-up questions and why she had not asked any of Berry; (4) whether the FBI's EEO Complaint processing policies allow the FBI to accept untimely EEO Complaints; and (5) how the FBI defines a "Responsible Management Official" ("RMO"). Doc. 28 at 2-6; *see also* Doc. 29. After reviewing Plaintiff's five requests for additional discovery, the Court finds no necessity, probability, or relevance of the inquiries sought.

To begin, Plaintiff undermines the purported necessity of additional limited discovery in multiple ways from the outset. Before filing the *Motion for Limited Discovery* (Doc. 28), Plaintiff filed its *Response in Opposition* (Doc. 25) to Defendant's *Motion* (Doc. 22), which

adequately and meaningfully responded to Defendant's arguments and factual assertions.

*Jensen*, 998 F.2d at 1554 ("[I]f ... the information sought is either irrelevant to the summary

judgment motion or merely cumulative, no extension will be granted.").  At no time in Plaintiff's

24-page brief (Doc. 25) or 347 pages of exhibits (Doc. 26, Attachments 1-8) does Plaintiff state

he cannot respond to the FBI's undisputed material facts due to a lack of sufficient evidence.

The purported necessity is further undermined by Plaintiff's admission that the motion was not

made out of necessity, but merely "as an abundance of caution."  Doc. 28 at 1.  In addition to the

lack of necessity, Plaintiff failed to assert specific and probable facts.  *See* Fed. R. Civ. P. 56(c)-

(d); *Adams*, 30 F.4th at 968-70.  Rather, the Court finds that Plaintiff's inquiries are prohibited

overly broad fishing expeditions.  *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990).

Each of Plaintiff's inquiries is further analyzed below.

      Plaintiff first claims that further investigation into how the FBI interprets and applies its

policies is necessary to determine whether he timely contacted the OEEOA in August and

September 2021, when he sent two emails to INSD, an entirely different department.  Doc. 28 at

2-3.  More specifically, Plaintiff wants to determine whether INSD contacted the OEEOA (and if

not, why not) and any resulting consequences.  *Id.*  Plaintiff cites three published policies, only

two of which were effective before his emails to INSD.  *See* Doc. 26-6 at 2-25 (OPR Policy

Guide 1168, effective September 8, 2021), 62-69 (OEEOA Harassment Policy 1038D, effective

October 31, 2018), 75-98 (Internal Affairs Policy Guide 1245PG, effective January 12, 2023).

Regardless, interpretation of these policies is neither disputed nor relevant.  As explained in

greater depth in the Court's summary judgment analysis, Plaintiff did not timely contact the

OEEOA per FBI policy and federal statute when he emailed the INSD in August and September

2021.  Further, it is undisputed that INSD does not refer complaints to OEEOA and that

reporting misconduct to the Initial Processing Unit of the INSD does not satisfy the requirement of contacting an EEO counselor, as required by statute and FBI Harassment Policy 1038D. Docs. 26-6 at 66 (OEEOA Harassment Policy § 5.4.2.), 38-7 at ¶¶ 4-8, 38-8 at ¶¶ 7-10.  As Unit Chief Corado testified,[5] the "only method for engaging in EEO counseling in the FBI is to contact OEEOA or an EEO counselor."  Doc 38-8 at ¶ 7.  Therefore, it is undisputed that no EEO "investigation" was required or took place based on Plaintiff's 2021 INSD complaints.

Plaintiff's second and third inquiries seek deposition testimony into whether Counselor Malozzi fulfilled the required EEO counseling goals, whether she reviewed documents Plaintiff provided, and whether she was required to and failed to ask follow-up questions.  Doc. 28 at 4-5; *see also* Doc. 25 at 2-3.  Plaintiff similarly seeks deposition testimony from anyone who investigated his 2021 INSD complaints to ascertain whether he "provided enough to allow the FBI to investigate [Plaintiff's] 2021 claims to satisfy the 'investigative' goal of EEO Counseling."  Doc. 29 at 2, ¶ 5.

[5] Plaintiff incorrectly sought to strike the declarations of Unit Chief Karen Corado (Doc. 38-8) and Unit Chief Joseph Boland (Doc. 38-7) in their entirety.  First, Plaintiff "motions" to strike within his surreply to Defendant's *Motion*. *See* Doc. 49 at 2-3.  Plaintiff cannot move to strike declarations in their entirety in a brief responding to a motion for summary judgment; plaintiffs must file separate motions to strike affidavits and declarations in their entirety.  *Searcy v. Soc. Sec. Admin.*, No. 91-4181, 1992 WL 43490, at *2 ("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."); *Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) ("Generally, … motions, briefs, and memoranda may not be attacked by a motion to strike…. When courts strike a filing as improperly filed, it becomes 'a nullity.'") (citations omitted).  Instead, courts disregard the portions of the statements that are not based on personal knowledge or otherwise do not comply with Rule 56(c)(4) when parties request the court to strike within a motion for summary judgment.  *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006); *Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003).

In addition to Plaintiff's procedural insufficiencies, Plaintiff's request to strike is also substantively insufficient.  First, even without the sections Plaintiff contests, the Court can nonetheless draw the same conclusions.  Second, Unit Chief Corado's and Unit Chief Boland's statements are based on their personal knowledge of the facts.  Specifically, Unit Chief Corado has sufficient personal knowledge to state that "[A]ll FBI employees must contact an EEO counselor if they seek to pursue and file a formal EEO Complaint of discrimination" and that raising allegations of discrimination harassment, or retaliation "with any other FBI entity, including the Inspection Division, will not satisfy the regulatory requirement of contacting an EEO counselor."  Doc. 38-8 at ¶¶ 6, 8.  Furthermore, the Court would only need to strike any problematic parts, which it may on its own accord. Fed. R. Civ. P. 12(f).  Even if Unit Chief Corado did not have sufficient personal knowledge, the Court would nonetheless determine that contacting the INSD does not satisfy the statutory requirement of contacting an EEO counselor.

As to the former, Plaintiff argues that if Counselor Malozzi "testifies in the affirmative, that defeats the failure to exhaust defense." Doc. 28 at 4. Yet, Plaintiff provides no evidence or reasoning to support the supposed "probable fact" that the FBI, specifically Counselor Malozzi, did not follow procedure. In fact, Plaintiff only argues that he "does not know if the [R]eport [of Counseling] is complete." Doc. 25 at 4. Furthermore, this inquiry is irrelevant because the role of EEO counselors is limited to the administrative, pre-complaint stage. *See* 29 C.F.R. §§ 1614.105(b)-(d); *see also* 29 C.F.R. § 1614.106. EEO counselors are not investigators and, therefore, do not determine which issues to investigate or whether they actually occurred. The record, including Counselor Malozzi's previous declaration, shows that she fulfilled her job responsibilities as required by statute. Docs. 22-8, 38-1; 29 C.F.R. §§ 1614.105(b)(1), (d). Moreover, Plaintiff and his lawyer had unambiguous notice of the statutory right to review the EEO Complaint and a responsibility to amend it if they deemed it was incomplete or inaccurate. Docs. 22-10, 26-2 at 80-82, 38-2; 29 C.F.R. § 1614.106(d); *see also Moraga v. Ashcroft*, 110 F. App'x 55, 61 n.3 (10th Cir. 2004) ("[Plaintiff's] silence in response to the [employer's] letter outlining the scope of its proposed investigation is convincing evidence she did not intend to pursue the alleged acts of [] discrimination contained in her amended judicial complaint.") (citing *Schroder v. Runyon*, No. 98-3128, 1998 WL 694518, at *2 (10th Cir. Oct. 6, 1998)).

As to the latter, it is undisputed that complaints to INSD are not referred to the OEEOA and that INSD investigations are focused on reported misconduct and commensurate disciplinary action, if any. Doc. 38-7 at ¶ 11; *see also* Doc. 38-6. Plaintiff's requested discovery, therefore, as to whether the INSD investigatory process could satisfy or circumvent the separate and distinct reporting process required for initiating an OEEOA investigation, is unnecessary in light of undisputed policy.

Plaintiff's fourth request seeks further inquiry into whether the FBI's EEO Complaint process permits accepting untimely accusations (and if so, whether it was appropriately applied in his case) and if doing so waives any timeliness affirmative defense.  Doc. 28 at 5-6.  In support, Plaintiff relies on non-binding dicta in a distinguishable case where the court held that timeliness was not an issue that warranted resolving at that time.  *Id.* at 5 (citing *Estes v. Vilsack*, No. 11-cv-03109, 2012 WL 4466549, at *4 (D. Colo. Sept. 27, 2012)).  As such, this case is not applicable here.  And although the Tenth Circuit has not ruled on this issue, numerous circuits and this District Court have ruled that when an agency accepts and investigates a complaint of discrimination, it does not waive a timeliness affirmative defense.  *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Belgrave v. Pena*, 254 F.3d 384, 387 (2nd Cir. 2001)); *Ester v. Principi*, 250 F.3d 1068, 1072 n.1 (7th Cir. 2001); *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985)); *Neises v. Shalala*, No. 97-320, 1998 WL 36030611, at *2 n.1 (D.N.M. June 30, 1998); *Hueston Green v. Garland*, No. 21-cv-00087, 2024 WL 453653, at *8 (D.N.M. Feb. 6, 2024).  Instead, "[a]n agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness."  *Bruce v. U.S. Dep't of Just.*, 314 F.3d 71, 74 (2nd Cir. 2002); *Hueston Green*, 2024 WL 453653, at *8.

With this in mind, and in accordance with Plaintiff's opposing arguments to summary judgment, Plaintiff presumably seeks "waiver of timeliness" discovery based on the Final Agency Decision ("FAD") issued on April 25, 2024, that dismissed his EEO Complaint pursuant to 29 C.F.R. § 1614.107(a)(3).  *See* Doc. 25 at 9, 16.  The FAD explained it was dismissing Plaintiff's EEO Complaint (FBI-2023-00075) because Plaintiff filed a civil action in district

court on January 16, 2024, and "raises the same issues as are raised in his administrative EEO" and "those issues are identical to those raised in in FBI-2023-00075." Doc. 26-7 at 2. Notably, however, the FAD did not dismiss Plaintiff's EEO Complaint on the merits, nor did it make an express finding that it was timely. *Id.*; *see Bruce*, 314 F.3d at 74; *Hueston Green*, 2024 WL 453653, at *8. As such, Plaintiff's reliance on the FAD as a waiver of timeliness objection and need for discovery is misplaced. Additionally, the FAD's use of the word "identical" plainly refers to its list of ten issues accepted for investigation in Plaintiff's formal EEO Complaint. *See* Doc. 26-2 at 85-86. Plaintiff's attempt, therefore, to nitpick the word "identical" to argue that the FAD incorporated *all* of his claims as raised in his Amended Complaint, both old and new, is disingenuous. Doc. 25 at 9, 16. In sum, Plaintiff has failed to demonstrate how discovery on the issue of whether timeliness has been waived will lead to a genuine issue of material fact.

Plaintiff's fifth and final sought inquiry is investigating how FBI policy defines a "Responsible Management Official" ("RMO") as an attempt to maintain Plaintiff's hostile work environment claim. Doc. 28 at 6-7. This information is immaterial. The investigation into Plaintiff's EEO Complaint listed two RMOs: SA Montgomery and SA Carp. Doc. 38-12 at 5. Plaintiff now alleges SA Montgomery as a perpetrator of a hostile work environment, yet Plaintiff did not mention SA Montgomery as part of a hostile work environment claim in either his EEO Complaint or the *Amended Complaint*. *Compare* Docs. 17, 22-10, *with* Doc. 25. Furthermore, as explained in the Declaration of Crystal Marable, the Supervisory Equal Employment Specialist in the OEEOA's Complaints Processing Unit, identifying and labeling someone as an RMO does not immediately equate a finding of wrongdoing. Doc. 38-12 at ¶¶ 4-6. Rather, such terminology is a tool that promotes productive investigation by allowing the assigned EEO investigator to interview the RMO, obtain a sworn statement, and gather relevant

documents. *Id.* at ¶ 7. Even without Defendant's additional evidence, SA Montgomery's status as an RMO does not change the fact that Plaintiff did not raise this claim in either his official EEO complaint (Doc. 22-10) or his *Amended Complaint* (Doc. 17). *See Moraga*, 110 F. App'x at 61 (citing *Schroder*, 1998 WL 694518, at *2) ("[Plaintiff's] silence in response to the [employer's] letter outlining the scope of its proposed investigation is convincing evidence she did not intend to pursue the alleged acts of [] discrimination contained in her amended judicial complaint."). Likewise, the term logically does not immediately equate to wrongdoing, inasmuch as SA Montgomery was labeled as an RMO preceding any investigation. Doc. 38-12 at 4-5 ("You have been assigned to investigate the complaint of discrimination made…The following have been identified as a Responsible Management Official (RMO) in this complaint: SA Nicole Montgomery…").

Additional discovery is narrowly restricted to *probable* facts *necessary* to respond to a summary judgment motion. Fed. R. Civ. P. 56(d); *see also Price*, 232 F.3d at 784 (explaining that if the movant could obtain limited discovery through mere, general allegations of the non-movant potentially possessing information, "every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files.") (citation omitted). Such discovery is therefore limited to the issues raised in the summary judgment motion. Fed. R. Civ. P. 56(d)(2). Here, Defendant's *Motion* does not address the merits of Plaintiff's claims. Doc. 22. Rather, Defendant's *Motion* is limited to the raised affirmative defense. *Id.* Thus, only the timing and types of claims of Plaintiff's reported allegations are at issue. Doc. 39 at 1. Because Plaintiff has not demonstrated the probability or necessity of the inquiries sought, the *Motion for Limited Discovery* is **DENIED**.

**B. Defendant's Motion Will Be Considered Under a Rule 56 Summary Judgment Standard.**

Unlike summary judgment, a motion to dismiss cannot look to any evidence in the record. *Brokers' Choice of Am.*, 861 F.3d at 1103. In other words, a motion to dismiss may only be granted when the pleadings do not assert a claim with a legal remedy. Fed. R. Civ. P. 12(b)(6). Here, the *Amended Complaint* asserts that Plaintiff timely exhausted his claims. *See* Doc. 17 at ¶ 4. Determining the validity of this claim and analyzing whether the Court should equitably toll Plaintiff's untimely claims requires analyzing the record. *Minjarez v. Potter*, No. CIV 09-0543, 2010 WL 4054121, at *10 (D.N.M. September 28, 2010) ("When a defendant brings a motion to dismiss… based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court 'analyze[s] th[e] case under 12(b)(6)...' unless a court considers materials outside the complaint, in which case 'it should … treat [][the] motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.'") (quoting *Douglas v. Norton*, 167 F. App'x 698, 704-05 (10th Cir. 2006)). Specifically, courts look to the plaintiff's EEO report. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) ("[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.") (citation omitted); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1171 (10th Cir. 2020) (explaining that the Tenth Circuit has "unequivocally held that the scope of the investigation 'is determined by the allegations in the [EEO] Charge itself.'") (quoting *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1165 (10th Cir. 2018)). "While we 'liberally construe' the plaintiff's allegations in the EEOC charge, 'the *charge* must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'" *Smith*, 904 F.3d at 1164 (emphasis in original).

Because Plaintiff's claims require analyzing the record, and both parties have submitted evidence for the Court's consideration, the Court must address Defendant's Motion only as a summary-judgment motion. *Esquibel v. Potter*, No. 04-cv-956, 2006 WL 8444259, at *1 (D.N.M. April 12, 2006) (citing *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1045 (10th Cir. 2002)).

## C. Plaintiff's Claims Were Not Exhausted

When considering summary judgment, whether a fact is material depends on the statute under which the Plaintiff asserts his claim. *See Anderson*, 477 U.S. at 248; *Heacker v. Safeco Ins. of Am.*, 676 F.3d 724, 727 (8th Cir. 2012); *LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-cv-6133, 2021 WL 4963610, at *1 (N.D. Ill. Oct. 26, 2021). Here, Plaintiff's claims arise under Title VII, "the exclusive judicial remedy… in the context of federal employment." *North v. Haaland*, No. CIV 20-01296, 2023 WL 3340813, at *3 (D.N.M. May 20, 2023) (citing *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 29 (D.D.C. 2012)). Title VII requires federal employees to timely exhaust administrative remedies compliant with "specific administrative complaint procedures" before bringing suit. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (citations omitted). While timeliness is not a judicial prerequisite, it is an affirmative defense that the Court must consider if properly raised by the defendant. *Id.* A defendant may use a motion for summary judgment to test an affirmative defense. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

The material question in this case is whether or not Plaintiff exhausted his administrative remedies prior to filing suit and, if so, timely exhausted them. In analyzing whether the charges submitted to the EEO were timely, and therefore within the Court's purview, the Court must also consider whether the claims in Plaintiff's *Amended Complaint* would reasonably arise from an investigation of the charges submitted to the EEO. In other words, the Court is not evaluating

the validity of Plaintiff's allegations, but rather what assertions he made and whether such claims were timely pursuant to federal statute and FBI policy. In his *Amended Complaint*, Plaintiff argues that he timely exhausted his administrative remedies. Doc. 17 at ¶ 4.

### i.    Plaintiff Did Not Timely Contact an EEO Counselor

To exhaust administrative remedies, aggrieved individuals must (1) contact an EEO counselor within 45 days of the alleged discrimination and (2) file a formal complaint if the matter is not first resolved informally. 29 C.F.R. §§ 1614.105(a)(1), (d); 29 C.F.R. § 1614.106(a); *see also* Docs. 38-8 at ¶¶ 6-10, 38-7 at ¶¶ 4-10. There are two different time requirements depending on the type of Title VII claim. For retaliatory and discrimination claims, each act must be exhausted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). But as subsequently analyzed, the requirements for what types of acts are a sufficient basis for a retaliation or discrimination claim differ. Comparatively, hostile work environment claims allow otherwise time-barred allegations to be included as part of a single hostile work environment claim. *Norton*, 376 F. Supp. 2d at 1120 ("For hostile work environment claims, however, only one of the alleged incidents must occur within the 45-day filing time period.") (citing *Morgan*, 536 U.S. at 116-17).

Plaintiff's August and September 2021 emails to INSD do not meet the requirement of contacting an EEO counselor. Docs. 38-8 at ¶¶ 6-10, 38-7 at ¶¶ 4-5. Although discrimination is misconduct, the INSD and OEEOA are separate departments. *See* Docs. 38-8 at ¶¶ 6-10, 38-7 at ¶¶ 5-10. INSD accepts all misconduct claims, even when the report is not the aggrieved

individual.  Doc. 38-7 at ¶¶ 3, 7, 12.; *see also* Doc. 26-6 at 82, 83 (Internal Affairs Policy Guide § 2.3).  Comparatively, the OEEEOA exclusively investigates discrimination against the aggrieved individual.  Docs. 22-4 at 2, 38-7 at ¶¶ 7, 12.  Plaintiff cites *Johnson v. Glickman* and *Sagna v. Blinken*, two non-binding cases, in arguing that INSD was "logically" connected to the EEO process and, therefore, his August and September 2021 emails to INSD's IPU satisfy timely EEO contact.  *Johnson v. Glickman*, 155 F Supp. 2d 1240 (D. Kan. 2001); *Sagna v. Blinken*, No. 22-cv-471, 2022 WL 16814906, at *5 (E.D. Va. Nov. 7, 2022).  Because these cases are not binding precedent, whether Plaintiff's contact with INSD in August 2021 meets the requirements of the test applied by the Kansas District Court is not material to Defendant's *Motion*.  *See DeWitt v. Sw. Bell. Tel. Co*., 845 F.3d 1299, 1306 (10th Cir. 2017) ("A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.").  Regardless, Plaintiff has failed to materially dispute each element.

First, Plaintiff fails to provide evidence demonstrating that the INSD is connected to the EEO.  To the contrary, the evidence demonstrates they are separate departments, and only one makes referrals to the other.  Doc. 38-8.  Second, *Sagna* also requires plaintiffs to "exhibit[] an intent to begin the EEO process" with any agency official logically connected to the EEO process.  2022 WL 16814906, at *5.  Specifically, and analogous with the present facts, the *Sagna* court elaborated that "[t]he email does not reference the 'EEO record' or the EEO 'process,' and as such does not exhibit the required intent."  *Id.*  Likewise, here, the content of Plaintiff's emails to INSD did not show an intent to contact an EEO counselor, nor does FBI policy reflect such.  Plaintiff's intent to seek discipline against SSRA Hall is demonstrated in Plaintiff's August 26, 2021, email to IPU, both in and of itself, and in comparison to Plaintiff's January 11, 2023, email.  The subject line of the August 2021 email is "Hate Speeches by SSRA

William 'Bill' Hall," while the subject line of his January 2023 email is "Discrimination Complaint."  Doc. 27-1 at 2, 8; *see also* Doc. 27-1 at 12 (Plaintiff's follow-up email to INSD on September 20, 2021, similarly reflects his August email: "Hate Speech part II").  Likewise, in Plaintiff's August 2021 email, he complained that SSRA Hall violated the "Core Values" of the FBI by discriminating multiple individuals (including himself) rather than focusing on the harm caused to him, like in his January 2023 email.  Doc. 27-1 at 11; *compare* Doc. 27-1 at 8-13, *with* Doc. 27-1 at 2-7.  Accordingly, neither *Johnson* nor *Sagna* provide Plaintiff the relief he seeks.

## ii. <u>Plaintiff Made Untimely Allegations in His EEO Complaint and Improperly Raised New Allegations in His Amended Complaint</u>

In determining whether a plaintiff has exhausted—and if so, timely exhausted—his administrative remedies, courts look to the EEO Complaint.  *Jones*, 502 F.3d at 1186 ("In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation 'constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.'") (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003); *Smith*, 904 F.3d at 1164.  While it is true that a plaintiff's EEO Complaint is not compiled for the purpose of bringing suit, a plaintiff's claims are generally limited to those that could reasonably follow the charges submitted to the OEEOA.  *Jones*, 502 F.3d at 1186 ("[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.") (citation omitted).  Otherwise, courts would hold government entities to an unreasonable standard of investigating matters they could not have otherwise known about.  Here, Plaintiff's *Amended Complaint* raises multiple accusations that were not initially brought in his EEO Complaint nor would naturally arise from further investigation of the facts he

provided.  *Compare* Doc. 17, *with* Doc. 22-2.  Thus, the record shows that all but one of Plaintiff's claims were either untimely exhausted or not exhausted at all.

### D. **Plaintiff's Singular Timely Complaint to EEO Counselor Malozzi Lacks Merit**

Of the issues Plaintiff discussed with EEO Counselor Malozzi, only one was timely. Docs. 38 at 16 n.8; 39 at 10 n.3.  Specifically, Plaintiff timely accused SSRA Fancher of not recognizing Plaintiff's workplace accomplishments.  *Id.*  In August or September 2022, SSRA Fancher requested information from every squad member to compile the performance ratings for the end of the fiscal year (ending on September 30, 2022).  Docs. 25 at 23-24, 27-2.  The *Amended Complaint* claims that despite this, in early January 2023, SSRA Fancher made an announcement in front of the entire squad, referring their newest agent, SA Dustin Patterson, to SAs Montgomery and Travis Kosir for questions or advice, when Plaintiff had more workplace accomplishments, allegedly.

Despite occurring within 45 days of contacting an EEO counselor and being mentioned to EEO Counselor Malozzi in an email dated January 30, 2023, Plaintiff failed to amend his EEO Complaint to include this allegation.  Doc. 27-2 at 4.  Yet, Plaintiff cites this incident as his fifth retaliation claim and as part of the improperly raised hostile work environment claim against SSRA Fancher.  Docs. 21 at 3, 17 at ¶ 78.  Nonetheless, even overlooking these shortcomings, this allegation does not constitute an adverse retaliatory action or demonstrate a hostile work environment.

### i. **This Allegation Does Not Satisfy Retaliation Standards**

To establish a *prima facie* case of retaliation, Plaintiff must show "(1) [a] protected employee action; (2) [an] adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and

the employer's adverse action."[6] *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007) (quoting

*Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003)).  An adverse action is

further defined as more than "a mere inconvenience or an alteration of job responsibilities."

*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (citation omitted).  A plaintiff must

establish that a reasonable employee would have found the challenged action materially

adverse—that is, that the action might "dissuade a reasonable worker from making or supporting

a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

However, the Supreme Court has emphasized that the employer's action must be "materially"

adverse because Title VII protects employees from "significant harms" and does not protect an

employee from "trivial harms," *i.e.,* "those petty slights or minor annoyances that often take

place at work and that all employees experience."  *Id.* at 68.

"Under *McDonnell Douglas*, the establishment of a prima facie case of discrimination

creates a presumption that the employer unlawfully discriminated or retaliated against the

employee."  *Norton*, 376 F. Supp. 2d at 1120 (citing *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973)).  To meet its burden of production under *McDonnell Douglas*, an employer

"need only articulate a facially nondiscriminatory reason for its actions.  The [employer] is not

obligated to litigate merits of its reasoning nor does it need to prove that reasons it relied upon

were bona fide."  *Norton*, 376 F. Supp. 2d at 1120.  Once the employer has met this burden, "the

presumption of unlawful discrimination drops from the case," and the employee bears the

---

[6] The Supreme Court recently resolved a circuit court split on whether an employee bringing a "Title VII [claim] must meet a heightened threshold of harm." *Muldrow v. City of St. Louis*, 601 U.S. 346, 353-54 (2024) (abrogating *Daniels v. U.P.S., Inc.*, 701 F.3d 620 (10th Cir. 2012) and *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527 (10th Cir. 1998)).  In doing so, the Supreme Court abrogated the Tenth Circuit's precedent of requiring an *adverse* action in a discrimination claim. *Id.* at 353 n.1.  However, the Supreme Court further clarified that an employment action "not only must cause 'some harm,' but also must affect '*an identifiable term or condition of employment*.'"  *Smith v. McDonough*, No. 20-1321, 2024 WL 2804428, at *8 (D.N.M. May 31, 2024) (discussing and quoting *Muldrow*, 601 U.S. at 355) (emphasis in original).  Although *Muldrow* abrogated the severity threshold in proving discrimination claims, the materially adverse employment action requirement in retaliation claims remains intact. *Id.*

ultimate burden of persuading the trier of fact that the employer unlawfully discriminated or retaliated. *Id.* An employee "discharges that burden directly by proving that the defendant acted with discriminatory motive or indirectly by showing that the stated reason for its action was a pretext, i.e., the facially nondiscriminatory reason was a cover-up for a decision motivated by unlawful discrimination." *Id.*

Plaintiff has failed to establish a *prima facie* case of retaliation. Plaintiff bases his five retaliation claims on the fact that he that took a knee at the Black Lives Matters protest in 2020 and filed complaints against SSRA Hall in 2021. Doc. 17 at ¶ 109. Yet, Plaintiff fails to explain how Fancher's alleged non-recognition is related or how it was materially adverse. While the standard of what constitutes an adverse action "is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances." *Semsroth v. City of Wichita*, 555 F.3d 1182,1184 (10th Cir. 2009). On the facts alleged, the "non-recognition [at issue] appears to present no more than an inconvenience." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 802 F. Supp. 2d 65, 72 (D.D.C. 2011), aff'd, 737 F.3d 767 (D.C. Cir. 2013); *see also Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir. 2004) ("There may be circumstances where inconveniences, alterations of job responsibilities, lower performance reviews, and *insufficient recognition for outstanding work* considered individually are insufficient to demonstrate an adverse employment action, yet when considered together, amount to an adverse employment action. We are not, however, faced with those circumstances here.") (emphasis added).

**ii.**     **This Allegation Does Not Create a Hostile Work Environment**

Plaintiff also fails to establish a viable hostile work environment claim against SSRA Fancher.  A hostile work environment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that a reasonable jury could find to be 'sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive environment[.]"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted); *Minjarez*, 2010 WL 4054121, at *14.  A Title VII Hostile Work environment claim requires that: (1) plaintiff is a member of a protected group; (2) plaintiff was subject to unwelcome harassment; (3) harassment was based on protected characteristic(s); and (4) harassment was sufficiently severe or pervasive to alter term, condition, or privilege of plaintiff's employment and created an abusive working environment.  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. 2000e et seq.; *Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 983 ("A plaintiff alleging a racially hostile work environment must show 'a steady barrage of opprobrious racial comment,' since 'general torment and taunting if not racially discriminatory are not actionable.'") (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)); *see also Minjarez*, 2010 WL 4054121, at *14 (requiring Plaintiff to prove that the alleged harassment was racially motivated or from racial animus).  "Relevant considerations to determine if an environment is sufficiently objectively hostile includes, in addition to looking at all the circumstances: '[T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Norton*, 376 F. Supp. 2d at 1124 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

Unlike discrimination or retaliation claims, a series of events that make up a hostile work environment claim are collectively considered one unlawful act. *Morgan*, 536 U.S. at 114. Therefore, a hostile work environment claim requires an employee to report only one of the many acts comprising the claim within 45 days. If met, the court will consider the entire time period of the hostile work environment claim. *Id.* However, the time requirement for hostile work environment claims is not "an open sesame to recovery for time-barred violations." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011). Determining which of Plaintiff's otherwise time-barred claims, if any, could be part of one, larger hostile work environment claim, "the court must determine: a) whether the time-barred and timely filed acts are adequately connected to each other (i.e., 'all acts which constitute the claim are part of the same unlawful employment practice,') and b) whether the acts collectively meet the independent requirements of that claim (i.e., are 'sufficiently severe or pervasive …')." *Gonzalez v. Garland*, No. 21-1653, 2023 WL 6160013 (D.D.C. Sept. 21, 2023) (internal citations omitted).

In his *Amended Complaint*, Plaintiff alleged that SSRA Hall's and SSRA Fancher's "comments altered the terms and conditions of [Plaintiff's] work environment as [Plaintiff] not only had to spend his duty day pursuing criminals but do so knowing that his direct supervisor, and that supervisor's heir apparent, regarded him as an interracial problem child who should 'be killed' on account of his opposition to black men being killed in the streets." Doc. 17 at ¶107. However, Plaintiff's EEO Complaint only listed his untimely complaints against SSRA Hall (who retired at least half a year before Plaintiff's initial contact with an EEO counselor (Doc. 17 at ¶ 76)) regarding a hostile work environment. Docs. 22-2, 22-3. Plaintiff cannot change the perpetrator of his hostile work environment claim in his brief. *Murphy v. Kay*, No. 07-188, 2008

WL 11413541, at *2 (D.N.M. December 3, 2008) (refusing on summary judgment to consider a § 1983 claim applied to a different individual than the persons identified in the complaint).

Furthermore, none of the allegations regarding SSRA Fancher's comments about the FBI's hiring practices regarding minorities and females is raised in the EEO Complaint. *Compare* Doc. 17, *with* Doc. 22-2.  In fact, Fancher's conduct listed in the EEO Complaint cannot be construed as ridicule, insult, or intimidation on any discriminatory basis.  *Mitchell v. City & Cnty of Denver*, 112 F. App'x 662, 667-68 (10th Cir. 2004) (construction of the plaintiff's charge could not have led an investigator to uncover a racial harassment/hostile work environment claim because "[n]othing in Mitchell's EEOC complaint indicates a hostile work environment."); *see also Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (holding the plaintiff's allegations did not include any of the "comments or ridicule [based on a protected class] that are hallmarks of hostile work environment claims."); *Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x 820, 825 (10th Cir. 2004) (finding that isolated acts involving "different allegations, conduct, and people, and occurred months or years apart" do not establish a hostile work environment claim).  To underscore this, Plaintiff later admitted in his declaration that Fancher did not make any racist remarks.  Doc. 27 at ¶ 13.

### E.  Plaintiff's Claims Are Not Subject to Equitable Tolling

As the Court addressed earlier, Plaintiff failed to circumvent the time requirements by incorrectly claiming the FBI waived its affirmative defense by investigating his untimely claims and dismissed his complaint because his *Amended Complaint* had claims identical to his EEO Complaint.  *See* Doc. 25 at 9, 16.  Equitable tolling is the only way for untimely claims to survive a Defendant's affirmative defense on a motion for summary judgment.  *Minjarez*, 2010 WL 4054121, at *10 ("While failure to exhaust administrative remedies is a jurisdictional bar to

suit, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), the Supreme Court of the

United States held that 'filing a timely charge of discrimination with the EEOC is not a

jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of

limitations, is subject to waiver, estoppel, and equitable tolling.'").

District courts have sole discretion in deciding whether to equitably toll the limitations

period. *Id.* at *11. However, federal courts narrowly construe the equitable exceptions, and thus

sparingly extend equitable relief. *Id.*; *Regenniter v. Potter*, 78 F. App'x 659, 622 (10th Cir. 2003)

(citing *Irwin v. Dep't of Veteran Affs.*, 499 U.S. 89, 96 (1990)). More specifically, the Tenth

Circuit typically only recognizes equitable tolling of Title VII claims when the plaintiff was

"actively misled" or "has in some extraordinary way been prevented from asserting his or her

rights." *Wilkerson v. Siegfried Ins. Agency,* 683 F.2d 344, 348 (10th Cir. 1982); *see also*

*Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). Here, the Court finds that Plaintiff does

not qualify for equitable tolling.

Equity is "much less forgiving in receiving late filings where the claimant failed to

exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96. For example, as the

Tenth Circuit held in *Castaldo v. Denver Public Schools*, "ignorance of the filing requirement

does not entitle [plaintiff] to equitable tolling." 276 F. App'x 839, 841; *see also Hickey*, 969

F.3d at 1124 ("[S]ubjective ignorance alone does not automatically entitle the plaintiff to the

exception in subsection (a)(2).") (quoting *Harris v. Gonzales*, 488 F.3d 422, 445 (D.C.C. 2007)).

Such is the case here. Plaintiff has not established a question of material fact as to whether he

was actively misled, and Plaintiff's undisputed alleged ignorance of the administrative

requirements does not entitle him to equitable relief.

### i. Plaintiff Had Sufficient Notice of the Requirement to Contact an EEO Counselor within 45 days.

Plaintiff unpersuasively ignores the distinct nature between the INSD, OPR, and OEEOA. Plaintiff claims his four No Fear Act trainings were insufficient notice of the EEO requirements. Doc. 25 at 4. This argument is not well taken. For example, this Court has previously found less training to be sufficient. In *Nash v. Vilsack*, plaintiff did not qualify for equitable tolling since two No Fear Act Trainings and two anti-harassment trainings sufficiently put the plaintiff on notice of the 45-day requirement. No. 20-01359, 2022 WL 4289963, at *9 (D.N.M. Sept. 16, 2022). Furthermore, the presentation's text was not ambiguous. It states that an "[a]ggrieved individual must contact the FBI's OEEOA within forty-five (45) days…" *Contra Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1327 (10th Cir. 2002) (finding that permissive verbiage (i.e. "may") failing to state the requirement of meeting the 45-day deadline is insufficient notice, thereby qualifying for equitable tolling); *Esquibel*, 2006 WL 8444259, at *2 (a poster stating an employee "*may* request EEO Ccounseling (sic)" does not give an employee sufficient notice that the 45-day time limitation is absolute) (emphasis added).

Even if this text was arguably ambiguous, Plaintiff had constructive notice from other sources. First, the EEO counselor and OEEOA contact information was readily available to all employees online. Doc. 38-8 at ¶ 5. Second, after sending his August 26, 2021, email, Plaintiff received an email with the signature line "Internal Processing Unit Internal Affairs Section (IAS) Inspection Division (INSD)." Doc. 27-1 at 8. Likewise, the confirmation email to Plaintiff's September 17 follow-up email to INSD bore the same signature line. *Id.* at 12. Therefore, Plaintiff received confirmation that his complaint to IPU was issued to the same entity investigating his own misconduct, not OEEOA. Third, when Plaintiff contacted IPU in August

of 2021 about SSRA Hall's alleged hate speech, he received a form titled "The FBI's

Disciplinary Process," which describes how OPR issues discipline.  Doc. 27-1 at 24-27.

Furthermore, the EEO provided a bright blue poster in the break room.  Doc. 38-9 at ¶¶

4-8; *see also* Doc. 38-8 at ¶ 4.  Plaintiff argues that his self-serving affidavit conflicts with SSRA

Fancher's affidavit (Doc. 38-9) and, therefore, his claim should survive summary judgment.

Doc. 49 at 2.  However, surviving summary judgments requires setting forth specific material

facts showing a genuine dispute.  Fed. Rules Civ. P. 56(e).  Tenth Circuit precedent has routinely

held that conclusory or self-serving affidavits alone do not create a genuine issue of material fact.

*Am. Fin. Life Ins. & Annuity v. Youn*, 7 F. App'x 913, 915 (10th Cir. 2001) ("Conclusory or self-

serving affidavits are insufficient for this purpose.") (citing *Murray v. City of Sapulpa*, 45 F.3d

1417, 1422 (10th Cir. 1995)).  Plaintiff failed to cite any reasonable basis in the record or provide

additional supporting evidence.

### ii.    Plaintiff Had Sufficient Notice to Amend his Formal EEO Complaint.

Plaintiff received notification of his rights and responsibilities four times, particularly his

statutory right and responsibility to amend.  Docs. 38-2, 38-4, 26-2 at 80-82, 84-88.  The FBI

EEO Program's "Notice of Right to File a Discrimination Complaint" states, "[t]he complaint

must be *specific* and encompass only those matters discussed with me.  If any additional

discriminatory action(s) occur(red) after receiving this Notice of Right to File a Discrimination

Complaint, it may be included and/or amended to your filing if it is like or related to the issue(s)

discussed with me."  Doc. 27-4 at 2.  It is unclear how Plaintiff assumed that the FBI, without

additional information, would investigate those claims.  The requirement to disclose grievances

is further emphasized in the "Written Notification to Aggrieved" which states: "Only claims

raised during the informal EEO process or claims which are like and related to those claims may

be the subject of a formal EEO Complaint or an amendment thereto." Doc. 38-2 at 4. Plaintiff did not make any amendments to his EEO Complaint or dispute any of the ten issues approved for investigation. Doc 22-1 at ¶¶ 6-8.

Although regulation states that a complainant "may" amend their complaint, Plaintiff already had constructive and actual knowledge of the 45-day deadline by this point, and he was represented by counsel throughout the complaint process. 29 C.F.R. § 1614.106(d); *see Lincoln*, 900 F.3d at 1181 ("Thus, where discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge."). In light of Plaintiff having constructive notice, actual notice, and legal representation, Plaintiff fails to persuade the Court that his circumstances warrant this sparingly granted equitable relief.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that Plaintiff's *Motion for Limited Discovery* (Doc. 28) is not well-taken and is thus **DENIED**. The Court further finds Defendant's *Motion* (Doc. 22), when considered under summary judgment standards, is well taken and is **GRANTED**.

IT IS SO ORDERED.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**