IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM BERRY,

Plaintiff,

v. No. 24-cv-52 JFR/SCY

TODD W. BLANCHE, *in his official capacity as Attorney General of the United States of America*,[1]

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's *Motion to Dismiss or for Summary Judgment* ("*Second MSJ*") filed May 15, 2026. Doc. 80. Plaintiff responded on May 28, 2026, Doc. 81, and Defendant replied on June 11, 2026, Doc. 83. Briefing is complete. Doc. 84. Having reviewed the record and relevant law, the Court finds that the *Second MSJ* (Doc. 80) is well taken and it is therefore **GRANTED**.

## I. UNDISPUTED MATERIAL FACTS AND RELEVANT FACTUAL BACKGROUND

The below facts are taken from the Undisputed Material Facts ("UMFs") set forth in Defendant's *Second MSJ* (Doc. 80) and Plaintiff's Response (Doc. 81). *See* Doc. 80 at 3-5 (Defendant setting forth 21 UMFs, enumerated 1-21); Doc. 81 at 3 ("Plaintiff does not dispute paragraphs 1-21."); Doc. 81 at 3-5 (Plaintiff setting forth 14 additional UMFs, enumerated A-N); Doc. 83 at 2-4 (Defendant admitting UMFs A, C-H, J-N, disputing ¶ B ("Disputed Fact B"), and admitting in part ¶ I ("Partially Admitted Fact I")).[2] Additionally, the Court relies upon the

[1] At the time of filing suit, Merrick B. Garland served as the United States Attorney General. *See* Doc. 1 at 1. As of the date of this Memorandum Opinion and Order, Todd W. Blanche serves as the United States Attorney General and is therefore automatically substituted as the named defendant. FED. R. CIV. P. 25(d).

[2] As used herein, the Court will cite UMFs 1-21, which can be found on pages three through five of Defendant's *Second MSJ*, Doc. 80 at 3-5, and UMFs A-N, which can be found on pages three through five of Plaintiff's Response, Doc. 81 at 3-5, except for the already-defined references for Disputed Fact B and Partially Admitted Fact I.

Office of Equal Employment Opportunity Affairs ("OEEOA") letter ("EEO Letter") accepting ten issues for investigation for the complete list quoted below. *See* Doc. 22-10 at 2-3.

Between 2018 and 2022, as a Special Agent ("SA") for the Federal Bureau of Investigation ("FBI"), Plaintiff thrice completed the No Fear Act training, UMF 6 (citing Doc. 22-6; Doc. 22-7), which was created and provided by the FBI's OEEOA (the FBI's EEO office, which includes EEO counselors, UMF 8 (citing Doc. 22-3 at 2)), UMF 7 (citing Doc. 22-1 ¶¶ 4-5, 11-12), and "stated [that] an employee must contact an EEO Counselor or the FBI's OEEOA 'within 45 days of the alleged discriminatory action(s),'" UMF 9 (quoting Doc. 22-3 at 3). Additionally, in the common break room of the Farmington Residential Agency ("FRA"), UMF 10 (citing Doc. 38-9 ¶ 4), which was across from Plaintiff's desk and he frequently used, UMF 12 (citing Doc. 38-9 ¶ 8), the "FBI prominently displayed," UMF 10 (citing Doc. 38-9 ¶ 4), inside a glass case visible to employees each time they entered or exited the break room, *id.* (same), a "bright blue EEO poster [which] stated [that] employees must contact an EEO counselor within 45 days of a discriminatory action and [that] failure to do so 'will likely result in forfeiture of your right to pursue a claim of discrimination,'" UMF 11 (quoting Doc. 38-9 ¶ 4). Further, "[t]he EEO counselor and OEEOA contact information was readily available to all employees online." UMF 13 (citing Doc. 38-8 ¶ 5).

"In March 2021, SA Nicole Montgomery made an anonymous complaint against Plaintiff accusing him 'of going to Telluride, Colorado on a government paid house hunting trip and [seeking funds for the same] when the Berry's had already purchased a house,' among other things." UMF 1 (alteration in original) (quoting Doc. 17 ¶ 31). Later in March 2021, Plaintiff received notification that he was being investigated ("INSD Investigation") by the FBI's Inspection Subdivision ("INSD") for misusing travel benefits. UMF 2 (citing Doc. 17 ¶ 37).

On January 7, 2023, Plaintiff received a letter ("OPR Letter") from the FBI's Office of Professional Responsibility ("OPR") proposing his dismissal based on the INSD's finding that he misused travel funds. UMF 4 (citing Doc. 17 ¶ 81).

On January 11, 2023, Plaintiff contacted EEO Counselor Marie T. Malozzi (formerly Kuchay),[3] UMF 14 (citing Doc. 22-8 ¶ 8; Doc. 22-1 ¶ 9; Doc. 22-2 at 3); *see also* UMF A (citing Doc. 27-1 at 2-7), who interviewed Plaintiff on January 25, 2023, UMF 15 (citing "Doc. 22-[8]" ¶ 9), and subsequently drafted a Report of Counseling, *id.* (citing "Doc. 22-[8]" ¶¶ 13-14); *see also* UMF 16; UMF 17.

On or around February 10, 2023, Plaintiff filed a Complaint of Discrimination with the OEEOA ("EEO Complaint"). *See* UMF 18 (citing Doc. 22-3); UMF C (citing Doc. 26-2 at 84); *see also* UMF E (citing Doc. 22-3 ¶¶ 31, 37); UMF F (citing Doc. 22-3 ¶¶ 6, 15, 29). Therein, Plaintiff alleged that "on or around January 7, 2023," he "received a proposed dismissal letter from the FBI for having a house under contract when asking to be enrolled in the relocation program [and] within the dismissal letter a similar offender . . . was only given a 60 day suspension." UMF D (alterations in original) (quotation marks omitted) (quoting Doc. 22-3 ¶ 32). The "EEO Complaint also alleged that while the FBI sought to fire [Plaintiff] for having a

---

[3] Plaintiff asserts the additional fact that:

> The reason [Plaintiff] contacted the EEO Counselor on January 11, 2023, was because on January 7, 2023, he (a) learned for the first time that the FBI sought to terminate his employment and (b) possessed facts to credibly allege that this termination was motivated by race insofar that the FBI was seeking to fire him (a black man) whereas [Plaintiff] was aware of two instances of white FBI agents who committed offenses of equal severity were not subjected to proposed termination.

Disputed Fact B (citing Doc. 27 ¶¶ 8-9). Defendant disputes this as "[i]mmaterial," and argues:

> Even if the reason for the delay is material, which is disputed, Plaintiff's own self-serving and conclusory affidavit is insufficient to create a genuine issue sufficient to survive summary judgment. Plaintiff made the self-serving statements for the first time on May 22, 2024, in support of his response in opposition to Defendant's First Motion for Summary Judgment.

Doc. 83 at 2 (citations omitted) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); Doc. 22)).

house under contract while involved in a relocation program the FBI, via Bill Hall, did not propose the termination of two white agents." UMF E (citing Doc. 22-3 ¶¶ 31, 37).

"Following the filing of the EEO Complaint, the OEEOA sent Plaintiff's Counsel [the EEO Letter], advising that Plaintiff's EEO Complaint was being processed and that several issues were accepted for investigation." UMF 19 (citing Doc. 22-10). Specifically, the EEO Letter enumerated the following ten issues accepted for investigation:

1. In June 2020 the Supervisory Senior Resident Agent (SSRA) said that "all [Black Lives Matter] protestors should be killed," and that complainant should not consider working in the Farmington, New Mexico, Resident Agency if he "did not 'vote right.'"

2. In or around August or September 2020 the SSRA said that "[B]lack people need to get over racism";

3. In November 2020 a Special Agent (SA-1) asked if he was part of "Kneel Team Six," and said that any SAs who "kneeled during the [Black Lives Matter] protests should have been kicked out of the FBI";

4. **In or around early 2021 he learned he had been referred to the Inspection Division for alleged WebTA fraud and was being investigated**;

5. Between May 2021 and March 2022 the SSRA made a number of offensive and disparaging comments about Native Americans, certain religious groups, and gay individuals;

6. In or about October 2021 the SSA called him a "fucking coward";

7. On an unspecified date another Special Agent (SA-2) told the squad that he "was one of the kneeling agents in Washington DC during the [Black Lives Matter] protests";

8. In or around October 2022 the SSRA "bragged . . . about disowning his [W]hite daughter until she broke up with her [B]lack boyfriend";

9. **On or about January 7, 2023, he received a letter of proposed removal**; and

10. On or about January 17, 2023, the SSRA told a group of employees that he had identified the complainant as one of several individuals "who had provided complaints against him."

Doc. 22-10 at 2-3 (alterations in original) (emphasis added); *see also* UMF G. "Plaintiff did not file any amendments to his EEO Complaint," UMF 20 (citing Doc. 22-1 ¶¶ 6, 8), and "did not contest the issues identified for investigation by the EEO during the administrative proceedings," UMF 21 (citing Doc. 22-1 ¶ 7).

The FBI then conducted an investigation, which included, with respect to Accepted Issue Number Nine, interviews of Plaintiff and "at least six other witnesses." UMF H (citing Doc. 26-2 at 107-08; Doc. 26-3 at 4; Doc. 26-4 at 19; Doc. 26-5 at 5, 33, 39-40, 49).

"In May 2023, after an administrative hearing, an 'OPR conduct board' declined to fire Plaintiff but suspended him for 60 days." UMF 5 (citing Doc. 17 ¶ 92).

## II. RELEVANT PROCEDURAL BACKGROUND

### A. Complaint and Amended Complaint

On January 15, 2024, Plaintiff filed the present lawsuit. Doc. 1. The Amended Complaint (Doc. 17)—which simply removed the redaction of certain personal identifying information included in the original Complaint, *compare* Doc. 1, *with* Doc. 17; *see also* Doc. 15 at 1 (ordering Plaintiff to "file the unredacted version of his complaint (Doc. 1).")—is the operative complaint and states three claims for relief under Title VII: (I) marital and racial discrimination, Doc. 17 ¶¶ 97-103, with four adverse employment actions alleged, *id.* ¶ 99; (II) hostile work environment, *id.* ¶¶ 104-07, with two perpetrators discussed, *id.* ¶ 107; and (III) retaliation, *id.* ¶¶ 108-10, with five adverse employment actions alleged, *id.* ¶ 110.[4]

---

[4] *But compare* UMF I ("[Plaintiff] then filed his complaint alleging, *inter alia*, a claim for race discrimination." (citing Doc. 17)), *with* Doc. 83 at 3 (Defendant only "[a]dmitt[ing] in part" UMF I because "Plaintiff's initial complaint was filed January 15, 2024 (Doc. 1). Plaintiff amended his Complaint three months later. However, he made no substantive changes to the Complaint, nor did he seek to add the [OPR Letter] as an adverse action upon which he based his claims.").

Of the four adverse employment actions alleged in Plaintiff's discrimination claim, the one presently relevant is "(c) being investigated for HHT related fraud." *See* UMF L (quotation marks omitted) (quoting Doc. 17 ¶ 99).

However, as the Court later addresses, Plaintiff now relies upon the fact that in ¶ 81 of his Amended Complaint, under the "IV. Facts" Section, Doc. 17 ¶¶ 8-95, he alleged that:

> On or around January 7, 2023, [Plaintiff] received a proposed dismissal letter from the FBI for having a house under contract when asking to be enrolled in the relocation program. Although that [OPR] [L]etter sought to fire [Plaintiff], it oddly noted that a similar offender was only given sixty days suspension to an employee that closed on his house the first day of his house hunting trip.

UMF J (quotation marks omitted) (quoting Doc. 17 ¶ 81). In ¶ 96—under the "V. Claims" Section, but before Count I (Discrimination on Race and Marital Status), *see* Doc. 17 ¶¶ 97-103—the Amended Complaint then stated that "Plaintiff re-alleges the above paragraphs." UMF K (quotation marks omitted) (quoting Doc. 17 ¶ 96).

### B. <u>Grant of Summary Judgment and Plaintiff's Appeal</u>

On May 6, 2024, Defendant filed a *Motion for Summary Judgment or Alternatively Motion to Dismiss Certain Claims* ("*First MSJ*"). Doc. 22. On June 6, 2024, Plaintiff responded in opposition, Doc. 25, and then filed a *Motion for Limited Discovery*, Doc. 28. On August 8, 2024, Defendant replied in support of his *First MSJ*, Doc. 38, and then filed a response in opposition to Plaintiff's *Motion for Limited Discovery*, Doc. 39. On August 21, 2024, Plaintiff replied in support of the *Motion for Limited Discovery*. Doc. 47. With leave of the Court, *see* Doc. 42; Doc. 44; Doc. 52, Plaintiff filed a Surreply in opposition to Defendant's *First MSJ* on August 30, 2024, Doc. 49, and Defendant filed a Response to the Surreply on September 23, 2024, Doc. 53.

On January 9, 2025, the undersigned issued a Memorandum Opinion and Order ("MOO") denying Plaintiff's *Motion for Limited Discovery* (Doc. 28) and granting Defendant's *First MSJ* (Doc. 22). Doc. 55; *see also* UMF M. Of relevance here, the undersigned found that:

> Plaintiff's *Amended Complaint* raises multiple accusations that were not initially brought in his EEO Complaint nor would naturally arise from further investigation of the facts he provided. *Compare* Doc. 17, *with* Doc. 22-2. Thus, the record shows that all but one of Plaintiff's claims were either untimely exhausted or not exhausted at all.

Doc. 55 at 26-27. The Court identified that one claim as being Plaintiff's allegation that SA Fancher did not recognize Plaintiff's workplace accomplishments. *Id.* at 27. However, the Court further found that this claim failed as a matter of law, since "Plaintiff failed to amend his EEO Complaint to include this allegation," and, even so, it did "not constitute an adverse retaliatory action or demonstrate a hostile work environment." *Id.*

**C. <u>Appeal and Remand</u>**

On February 3, 2025, Plaintiff appealed to the Tenth Circuit. Doc. 57; *see also* UMF M; UMF N. On February 23, 2026, the Tenth Circuit issued an Order and Judgment affirming in all respects but one and remanding a single issue for this Court's consideration. Doc. 63. Plaintiff petitioned for panel rehearing. The panel denied rehearing but *sua sponte* revised its decision, "to the extent of the modifications to footnote 10 in the attached revised decision," Doc. 68-1 at 1, and entered a revised Order and Judgment on March 2, 2026, *see id.* at 3-29.[5] The revision was "non-substantive" and did "not affect the outcome of th[e] appeal . . . ." *Id.* at 2. *Compare* Doc. 63 at 16 n.10 ("Although [Plaintiff] also suggested in district court that the [OPR] [L]etter exhausted the alleged INSD [I]nvestigation adverse action listed in his amended complaint for

[5] In the present briefing, the parties cite Doc. 64, which is the Tenth Circuit's Order sua sponte revising the Order and Judgment, Doc. 64 at 1-2, and revised Order and Judgment, *id.* at 3-28. Comparatively, Doc. 68-1 is the same, but attached to Doc 68, which is the letter officially transferring jurisdiction back to the Court. Thus, there is no difference in content or page number between citations to Doc. 64 and Doc. 68-1.

his retaliation claim, *see* App., Vol. I at 129-30, he has not attempted to argue this on appeal."), *with* Doc. 68-1 at 18 n.10 (changing only the text following the appellate volume citation to state: "he has not adequately argued this on appeal.").

The remaining issue on remand is "consider[ing] [Plaintiff]'s argument that his report of the [OPR] [L]etter to the EEO counselor exhausted his discrimination claim based on the INSD [I]nvestigation of him for travel fraud." Doc. 68-1 at 28. The Tenth Circuit "otherwise affirm[ed] the district court's judgment." *Id.* The remaining issue arises from Plaintiff's argument, raised for the first time in his Response to Defendant's *First MSJ*, that:

> A complaint of discrimination must be made in good faith and cannot be made in a vacuum. While [Plaintiff] knew he was subject to an [INSD] [I]nvestigation in 2022 he did not know, until January 2023, that this [INSD] [I]nvestigation would result in his attempted termination. When [Plaintiff] learned on January 7, 2023, that FBI proposed terminating his employment he then had the information to allege in good faith that he was being treated differently than two similarly situated white employees who also committed OPR worthy offenses but were not recommended for termination ([SA] Fancher - who lost his bullet proof vest and suffered no consequence and [SA] Montgomery's husband who received assistance from [Plaintiff] in navigating an OPR matter involving contacting a confidential informant on social media). With these facts in mind, [Plaintiff] reported to the EEOC Counselor on January 11, 2023, which was a timely report because "[i]n a case of ongoing discrimination . . . the time limit begins with 'the discriminatory act, not from the time of a later, inevitable consequence of that act,'" which, in this case, would have been the July 2023 removal of his job duties - - an "inevitable consequence" of the proposed termination that the FBI investigated and allowed [Plaintiff] to seek a remedy.

Doc. 25 at 20-21 (footnotes and citations omitted); *see* UMF N (quoting Doc. 81-1 at 13).

### D. Plaintiff's Motions to Supplement/Amend Complaint

On March 27, 2026, Plaintiff filed a *Motion to Supplement Complaint*. Doc. 71. On March 31, 2026, the Court denied Plaintiff's *Motion to Supplement Complaint* (Doc. 71) without prejudice because it "fail[ed] to state whether the motion is opposed nor a good-faith request for Defendant's position, and thus fail[ed] to comply with D.N.M.LR-Civ. 7.1(a)." Doc. 72 at 1.

On April 1, 2026, Plaintiff filed an amended *Motion to Supplement Complaint* ("*Amended Motion to Supplement Complaint*"). Doc. 73. Defendant responded in opposition on April 8, 2026, Doc. 74, and Plaintiff replied in support on April 15, 2026, Doc. 75. On May 6, 2026, the Court denied Plaintiff's *Amended Motion to Supplement Complaint* (Doc. 73) without prejudice. Doc. 79. In sum, the Court found that FED. R. CIV. P. 15(d) did not apply, Doc. 79 at 8-9, and that there existed good cause to deny leave to amend under FED. R. CIV. P. 15(a)(2), Doc. 79 at 9-14.

**E. <u>Present Briefing</u>**

Defendant filed the *Second MSJ* on May 15, 2026. Doc. 80. After setting forth the background, twenty-one UMFs, and the legal standards for dismissal under FED. R. CIV. P. 12(b)(6) and summary judgment under FED. R. CIV. P. 56, *see id.* at 1-9, Defendant advances two principal arguments, *see id.* at 9-18, in support of dismissing "Plaintiff's sole remaining claim for discrimination, arising out of the INSD [I]nvestigation in March 2021, on the grounds that he failed to timely exhaust his administrative remedies as required by Title VII," *id.* at 1. First, Defendant argues that the only adverse action pled, and thus at issue, is the initiation of the INSD Investigation (not the continuation of the INSD Investigation or the OPR Letter) and that Plaintiff failed to timely exhaust that claim since, despite learning of the INSD Investigation in March 2021, he did not contact an EEO counselor until January 11, 2023. *See id.* at 9-14. Second, Defendant argues that Plaintiff's claim is not subject to equitable tolling because Plaintiff had constructive notice of the 45-day reporting requirement and Plaintiff was on notice of his failure to allege in the Amended Complaint (Doc. 17) that the OPR Letter was an adverse action. *See id.* at 14-18.

Plaintiff filed his Response in opposition to Defendant's *Second MSJ* on May 28, 2026. Doc. 81. After setting forth the issue on remand, summarizing his three counterarguments, admitting Defendant's twenty-one UMFs, and setting forth fourteen additional UMFs, *see id.* at 1-5, Plaintiff then sets forth in greater detail his three counterarguments, *see id.* at 5-14. First, Plaintiff argues that because the initiation of an investigation is not, standing alone, an adverse action, his 45-day "clock" could not have run from March 2021; it began with the OPR Letter, and Defendant is estopped from reversing its 2024 position that the INSD Investigation was not an adverse action. *See id.* at 6-9. Plaintiff also argues that exhaustion cannot be required before a plaintiff has facts to bring a discrimination claim in good faith, which Plaintiff contends is the case here since the OPR Letter gave him knowledge of differing treatment with similarly situated white employees. *See id.* at 9-10. Second, Plaintiff argues that under FED. R. CIV. P. 8 and 12, the Amended Complaint is to be read liberally, as a whole, and in his favor, and under those standards the Amended Complaint properly pled a discrimination claim based on the OPR Letter, so no amendment was needed. *See id.* at 10-13. Third, Plaintiff argues that under FED. R. CIV. P. 56, reasonable inferences in his favor show exhaustion because the OPR Letter was Accepted Issue No. 9 in the EEO Letter and was investigated with at least six witnesses. *See id.* at 13-14. Additionally, Plaintiff attached a copy of the Reply Brief he submitted to the Tenth Circuit on September 5, 2025. Doc. 81-1.

Defendant filed his Reply in support of the *Second MSJ* on June 11, 2026. Doc. 83. After summarizing his UMFs and addressing Plaintiff's fourteen additional UMFs (Admitted UMFs A, C-H, J-N; Disputed Fact B; and Partially Admitted Fact I), *see id.* at 1-4, Defendant sets forth four arguments, *see id.* at 4-12. First, Defendant argues that the Court should not read exhaustion into the Amended Complaint because courts may not construct arguments for a

represented party, and Plaintiff's reliance on liberal pleading conflates pleading standards with the distinct question of exhaustion. *See id.* at 4-7. Second, Defendant argues that Plaintiff's contention that the INSD Investigation was not itself an adverse employment action conflates exhaustion with the merits and provides an alternative ground for dismissal because if the INSD Investigation was not an adverse employment action, the alleged adverse employment action pled (i.e., the INSD Investigation) fails on the merits. *See id.* at 7-9. Third, Defendant argues that Plaintiff's 45-day clock to initiate contact with an EEO counselor began March 2021, when he learned of the INSD Investigation and that Plaintiff's arguments otherwise "contradict[ ] his prior allegations." *See id.* at 9-10. Fourth, despite Plaintiff's Response "not specifically address[ing] or argu[ing] for equitable tolling of the timeline for exhaustion," Defendant argues that it does not apply because Plaintiff has not alleged facts to show active deception by Defendant and Tenth Circuit precedent does not warrant equitable tolling where the plaintiff is aware of the facts constituting discrimination but lacks direct knowledge of the subjective discriminatory purpose. *See id.* at 11-12.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is 'material' if, under the governing [substantive] law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury

could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). To carry its initial burden, the movant need not negate the nonmovant's claim. *Celotex*, 477 U.S. at 322-23. Instead, the movant only bears the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the movant meets its burden, the nonmovant must show a genuine issue for trial. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion . . . ."). To do so, the nonmovant must "go beyond the pleadings," *Celotex*, 477 U.S. at 324, and "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof," *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990), by either "citing to particular parts of materials in the record," FED. R. CIV. P. 56(c)(1)(A), or "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," FED. R. CIV. P. 56(c)(1)(B).

The nonmovant cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200-01 (10th Cir. 2022). Rather, the nonmovant's "version of the facts must find support in the record," *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (quotation marks and citation omitted), because "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Likewise, summary judgment may be granted where "the evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In applying this standard, courts "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment," *Applied Genetics*, 912 F.2d at 1241, resolve all doubt against the movant, and construe all admissible evidence in the light most favorable to the nonmovant, *see Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999). The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Where there is no genuine issue of material fact in dispute, then a court must determine whether the movant is entitled to judgment in its favor as a matter of law. *See* FED. R. CIV. P. 56(a).

**B. <u>Title VII</u>**

Title VII of the Civil Rights Act of 1964 ("Title VII"), "the exclusive judicial remedy for claims of discrimination in federal employment," *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976), "makes it unlawful 'to discharge any individual, or otherwise to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin,'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)).

### 1. **Exhaustion**

"Federal employees alleging discrimination or retaliation prohibited by Title VII . . . must comply with specific administrative complaint procedures in order to exhaust their administrative remedies" before filing suit. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quotation marks and citation omitted). "These procedures are set forth in Part 1614 of Chapter 29 of the Code of Federal Regulations." *Id.* In sum, a federal employee must: (1) "initiate contact" with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1); and (2) file a formal complaint "with the agency that allegedly discriminated against the complainant. . . . within 15 days of receipt of the notice required by § 1614.105 (d), (e) or (f)," 29 C.F.R. § 1614.106(a)-(b). Furthermore, "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002)). Thus, where discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended charge with the EEOC to satisfy the exhaustion requirement as to discrete incidents occurring after the initial charge. *See id.*

A plaintiff's failure to exhaust administrative remedies is no longer a jurisdictional bar to suit. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181-85 (10th Cir. 2018). Rather, exhaustion is a "claim-processing rule" that may be forfeited; it is not a defense that the Court is required to entertain at any time in the proceedings. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (2019)

("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." (alteration in original) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam))). Failure to exhaust is an affirmative defense to be raised and proven by the defense. *See Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024), *cert. denied*, 146 S. Ct. 90 (2025). "When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to 'demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'" *Id.* (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

While failure to exhaust, as an affirmative defense, is "subject to waiver, estoppel and equitable tolling," 29 C.F.R. § 1614.604(f), such equitable doctrines "are to be applied sparingly." *Morgan*, 536 U.S. at 113. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The second prong "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) (emphasis in original).

**2. <u>Merits</u>**

If the alleged adverse employment actions pled are exhausted, then a court turns to the merits. *See Fort Bend Cnty.*, 587 U.S. at 549; *Hickey*, 969 F.3d at 1118.

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas* . . . ." *Khalik*, 671 F.3d at 1192 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Direct evidence is that:

> [W]hich if believed, proves [the] existence of [a] fact in issue without inference or presumption. For example, [s]tatements showing an existing policy which itself constitutes discrimination are direct evidence of discrimination. Statements that require the trier of fact to infer that discrimination was a motivating cause of an employment decision, however, are at most circumstantial evidence of discriminatory intent.

*McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1137 (10th Cir. 2024) (alterations, except the first, in original) (quotation marks and citations omitted). "Usually," however, "a plaintiff will not have direct evidence of discrimination and will establish her claims through [indirect] circumstantial evidence." *Id.* (quotation marks and citation omitted).

When considering indirect evidence, the burden shifting framework established by *McDonnell Douglas* proceeds in three steps. *See McDonnell Douglas*, 411 U.S. at 802-03. First, the plaintiff must "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (quotation marks and citation omitted). For a claim of racial discrimination, a prima facie case requires evidence that: (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action that caused, at least,[6] "some harm respecting an identifiable term or condition of employment," *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024); and (3) the challenged action took place under circumstances giving rise to an inference

[6] Because Plaintiff's claim fails at the question of exhaustion, the Court need not reach the merits, including the question of whether *Muldrow* applies to discriminatory adverse employment actions alleged by federal employees. *See Solomon v. Collins*, No. CIV-22-359, 2025 WL 2533520, at *8 n.21 (W.D. Okla. Sept. 3, 2025) ("The parties dispute whether a federal sector employee such as [Plaintiff] must show a "significant" change in job duties, responsibilities, or working conditions after *Muldrow* . . . . The Court need not decide that issue because [Plaintiff]'s prima facie case fails for a different reason . . . .").

of discrimination. *McNellis*, 116 F.4th at 1139.[7] Second, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192. Third, if the defendant carries its burden, "the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

## IV. ANALYSIS

On remand, the Court is to review Plaintiff's argument, raised in his Response to Defendant's *First MSJ*, that, as the Tenth Circuit specified, "his report of the [OPR Letter] to the EEO counselor exhausted his discrimination *claim based on* the INSD *[I]nvestigation* of him for travel fraud." Doc. 68-1 at 28 (emphasis added); *see also id.* at 17-18 ("[Plaintiff] presented this argument below in response to the Government's summary judgment motion, but the district court did not address it. Rather than attempt to address it here, we remand to the district court to do so." (citation omitted)). Under the mandate rule, it is "well established that a district court must comply strictly with the mandate rendered by the reviewing court." *Colo. Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.*, 962 F.2d 1528, 1534 (10th Cir. 1992); *see also* Doc. 68-1 at 17 ("*Despite not pleading that the [OPR] [L]etter was itself an adverse action*, *see* App., Vol. I at 54-55, [Plaintiff] contends he exhausted this alleged adverse action because the [OPR] [L]etter

---

[7] Plaintiff's remaining claim is one framed as both "marital and racial" discrimination. *See* Doc. 17 at 19 ("Count I – Discrimination on Race and Marital Status"). Title VII does not independently prohibit discrimination on the basis of marital status; its protected characteristics are race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e-2(a). To the extent Plaintiff's "marital" theory is cognizable under Title VII, it is as a race-discrimination claim premised on his interracial marriage. *See* Doc. 68-1 at 10 (noting the allegation that "SSA Hall" said Plaintiff "was going to be a problem, because he was interracial, and telling [him] that black people need to get over racism." (quotation marks and citation omitted) (alteration in original)). Because the Court resolves the claim on exhaustion grounds, it need not separately articulate a prima facie standard for that theory.

alerted him to the 'discriminatory consequences' of the INSD [I]nvestigation." (emphasis added)).

### A. **Defendant's *Motion* Will Be Considered Under a Summary Judgment Standard**

To begin, the present motion seeks either dismissal under FED. R. CIV. P. 12 *or* summary judgment under FED. R. CIV. P. 56. *See* Doc. 80 at 1. The Court will apply a FED. R. CIV. P. 56 summary judgment standard. Since the Tenth Circuit remanded for the Court to address a single unaddressed argument raised in briefing the *First MSJ* (Doc. 22), it makes sense to apply the same standard applied in the MOO granting Defendant's *First MSJ*. *See* Doc. 55 at 22-23. This appears to best comply with the Tenth Circuit's intent in issuing its mandate, with which this Court must "comply strictly." *Colo. Interstate Gas Co.*, 962 F.2d at 1534.

Plaintiff's noting of the fact that discovery has not yet occurred, Doc. 81 at 13, does not change the Court's conclusion because he has had ample opportunity to move for any necessary discovery under FED. R. CIV. P. 56(d). Moreover, when Defendant first moved in the alternative for summary judgment in his *First MSJ*, Plaintiff responded on the merits under the FED. R. CIV. P. 56 standard and did not argue that the Court should instead resolve the motion under FED. R. CIV. P. 12(b)(6). *See* Doc. 25 at 9-10.

### B. **Plaintiff Did Not Allege That the OPR Letter Was an Adverse Employment Action**

Plaintiff asks the Court to read his Amended Complaint "(a) as a whole, (b) liberally, and (c) in his favor" to plead a discrimination claim based on the OPR Letter itself. Doc. 81 at 10-12. However, as the Tenth Circuit recognized, Plaintiff did not plead the OPR Letter was an adverse action, *see* Doc. 68-1 at 17, and the Court denied without prejudice Plaintiff's *Amended Motion to Supplement Complaint* (Doc. 73), Doc. 79. As demonstrated herein, reading the Amended Complaint as a whole, liberally, and in Plaintiff's favor does not require the Court to

make unmade connections or construct unmade arguments on Plaintiff's behalf. *See Bekkem*, 915 F.3d at 1274-75 ("[A] plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides 'sheer speculation.'" (quoting *Khalik*, 671 F.3d at 1194)); *see also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("We do not believe . . . that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.").

### 1. <u>Plaintiff's Amended Complaint Only Pled the INSD Investigation as an Alleged Discriminatory Employment Action, and the Scope of This Claim Is Limited to the Initiation of the INSD Investigation</u>

Despite the Tenth Circuit's clear instruction on remand, the Court begins with making sense of Plaintiff's arguments by contextualizing what was pled and thus at issue.

Under FED. R. CIV. P. 8, "[a] complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bekkem*, 915 F.3d at 1274 (quoting *Khalik*, 671 F.3d at 1193). "'While we do not mandate the pleading of any specific facts in particular,' a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides 'sheer speculation.'" *Id.* at 1274-75 (quoting *Khalik*, 671 F.3d at 1194). Moreover, "the proper scope of the judicial complaint is determined from both the EEOC charge and the EEOC investigation," and courts ask "whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Guliford v. Beech Aircraft Corp.*, 768 F. Supp. 313, 316 (D. Kan. 1991) (quotation marks and citation omitted).

Here, the EEO Letter enumerated the INSD Investigation and OPR Letter as separate, alleged adverse employment actions accepted for investigation, *see* Doc. 22-10 at 2-3 (listing the INSD Investigation as Accepted Issue No. 4 and the January 7, 2023 removal letter as Accepted Issue No. 9), and Plaintiff's Amended Complaint only listed the former. *See* UMF L (quoting Doc. 17 ¶ 99); Doc. 83 at 3 (discussing UMF D); *see also* Doc. 68-1 at 24 ("We do hold, consistent with our sibling circuits, that an agency does not waive its exhaustion defense merely by accepting and investigating untimely claims."). Immediately after, the Amended Complaint discusses the conduct of SSRA Hall, *see* Doc. 17 ¶¶ 100-02, and "SA Montgomery (Hall's 'PT Princess') [who] caused [Plaintiff] to be investigated," *id.* ¶ 100. Indeed, this is the "context and detail" linking Plaintiff's pled alleged adverse action (i.e., the INSD Investigation) to an alleged discriminatory motive, and supports the inference that the adverse employment action Plaintiff intended to allege was indeed the INSD Investigation. Likewise, the scope of that allegation is limited to the initiation of the INSD Investigation because, as the Tenth Circuit recognized, in Plaintiff's EEO Complaint, he "failed to mention . . . [the] INSD's continued [I]nvestigation. This failure is an additional and separate ground to hold these discrete acts are unexhausted." Doc. 68-1 at 17 n.9 (citing *Lincoln*, 900 F.3d at 1181).

Plaintiff's reliance on *Swierkiewicz* and *McNellis* is misplaced. *See* Doc. 81 at 11. Those cases hold that a prima facie case is an evidentiary standard rather than a pleading requirement, and only address whether a claim is adequately pled, not whether a court will make an unpled argument on behalf of a represented party. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *McNellis*, 116 F.4th at 1137.

### 2. Shotgun Pleadings Do Not Change the Court's Conclusion

Plaintiff argues that the Court must read the Amended Complaint "as a whole" and in doing so, effectively relies upon shotgun pleadings. *See* Doc. 81 at 11-12 (arguing that "[t]aken as a whole, ¶¶ 10, 15, 21, 81, 96, 99, 100," establish a prima facie case of discrimination); *id.* at 13-14 (arguing that ¶¶ 81, 96, and 99 allege that he "suffered an adverse employment action," which Plaintiff then identifies as the "receipt of the [OPR] [L]etter").

For background, under the Amended Complaint's "IV. Facts" Section, Doc. 17 ¶¶ 8-95, Plaintiff pled that:

> On or around January 7, 2023, [Plaintiff] received a proposed dismissal letter from the FBI for having a house under contract when asking to be enrolled in the relocation program. Although that [OPR] [L]etter sought to fire [Plaintiff], it oddly noted that a similar offender was only given sixty days suspension to an employee that closed on his house the first day of his house hunting trip.

UMF J (quotation marks omitted) (quoting Doc. 17 ¶ 81). Under the "V. Claims" Section, but before Count I (Discrimination on Race and Marital Status), *see* Doc. 17 ¶¶ 97-103, the Amended Complaint states "Plaintiff re-alleges the above paragraphs." UMF K (quotation marks omitted) (quoting Doc. 17 ¶ 96).

The fact that Plaintiff incorporated ¶¶ 1-95 by reference does not save his claim or license a new theory after the one he pursued failed. Plaintiff cannot rely upon shotgun pleadings, *see* UMF K (quoting Doc. 17 ¶ 96), to now pursue a different theory. Moreover, any benefit of shotgun pleadings seems minimal where, as here, the incorporation occurs before the claim is set forth. *Compare* Doc. 17 ¶ 96 (reincorporating all preceding paragraphs by reference), *with id.* ¶ 97 (first paragraph under the discrimination claim).

To the contrary, FED. R. CIV. P. 8 requires a plaintiff to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). "It is not the role of either the court or the defendant to sort through a lengthy, poorly drafted complaint and voluminous exhibits in order to construct plaintiff's causes of action." *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014) (unpublished) (quotation marks omitted) (quoting *Schupper v. Edie*, 193 Fed. App'x 744, 746 (10th Cir. 2006) (unpublished)). That is especially the case here considering Plaintiff now asserts a theory with no clear, binding authority. *See Bekkem*, 915 F.3d at 1274-75; *Khalik*, 671 F.3d at 1193-94.

### 3. **To the Extent Plaintiff Is Asking the Court to Reconsider His *Amended Motion to Supplement Complaint*, the Court Declines the Invitation**

Despite arguing that he properly pled the OPR Letter was a discriminatory adverse employment action, Plaintiff closes by asking the Court to "deny the FBI's invitation to dismiss [Plaintiff]'s remaining claim due to a perceived pleading technicality and allow it to be decided on the merits," Doc. 81 at 14, and observes in a footnote that he "sought to amend /clarify his complaint post remand and that motion was denied without prejudice," *id.* at 13 n.6. To the extent this is a request that the Court revisit its denial without prejudice of Plaintiff's *Amended Motion to Supplement Complaint* (Doc. 73), Doc. 79, the Court declines because no such motion is properly before the Court. Indeed, a request for relief must be made by motion. *See* D.N.M.LR-Civ. 7.1(a).

Moreover, Plaintiff has not overcome the Court's rationale set forth in dismissing Plaintiff's *Motion to Supplement Complaint* (Doc. 73). *See* Doc. 79 at 6-14. Although the federal rules permit and require liberal construction and amendment of pleadings, the rules do not grant the parties unlimited rights of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Evans*, 936 F.2d at 1091("We do not believe . . . that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case. This practice, if permitted, would waste the parties' resources, as well as

judicial resources, on discovery aimed at ultimately unavailing legal theories and would unfairly surprise defendants, requiring the court to grant further time for discovery or continuances.”).

Since the Court declines to reconsider here, the Court need not consider Plaintiff’s arguments regarding prejudice to Defendant, *see* Doc. 81 at 3, 4 (UMF H), 14, since it is not an element of the affirmative defense of exhaustion, *see Hickey*, 969 F.3d at 1118.

### C. Plaintiff Failed to Timely Exhaust the Pled INSD Investigation Claim

#### 1. The Discrete Act Plaintiff Pled Accrued in March 2021

Having concluded that the alleged adverse employment action Plaintiff pled for his discrimination claim was the INSD Investigation, *see* UMF L (quoting Doc. 17 ¶ 99), and more specifically, the initiation of the INSD Investigation, the Court must determine when Plaintiff had to report this alleged adverse employment action to an EEO counselor.

Each discrete act of discrimination “constitutes a separate actionable ‘unlawful employment practice,’” that must be separately exhausted. *See Morgan*, 536 U.S. at 114. In *Almond v. Unified Sch. Dist. No. 501*, the Tenth Circuit explained that:

> Some adverse employment actions—such as demotion to a lower position—can require more work of the employee for less pay on an ongoing basis. Other adverse employment actions can involve entirely deferred consequences—such as a delayed demotion, a deferred reduction in pay, or a notice of termination with a grace period before actual firing occurs. But whether the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later, the “limitations period [ ] normally commence[s] when the employer’s decision is made” and “communicated” to the employee. Put differently, the “proper focus” is on the time that the employee has notice of “the *discriminatory acts,*” not “the time at which the *consequences* of the acts became most painful.”

665 F.3d 1174, 1177 (10th Cir. 2011) (alterations and emphasis in original) (internal citations omitted) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).

Plaintiff received notification of the INSD Investigation in March 2021. UMF 2 (citing Doc. 17 ¶ 37). Plaintiff did not contact an EEO counselor until January 11, 2023. UMF 14 (citing Doc. 22-8 ¶ 8; Doc. 22-1 ¶ 9; Doc. 22-2 at 3). Therefore, any claim based on the initiation of the INSD Investigation is unexhausted, and, as set forth below, Plaintiff's arguments do not change this conclusion.

### 2. Plaintiff's Contention That the INSD Investigation Was Not an Adverse Action Conflates Exhaustion with the Merits

Plaintiff next argues that the initiation of an investigation is not, standing alone, an adverse employment action, and that his clock therefore could not have begun until he received notice of the proposed termination in the OPR Letter. *See* Doc. 81 at 6-7 (discussing *Lincoln v. Maketa*, 880 F.3d 533, 541-43 (10th Cir. 2018), and Doc. 81-1).

Plaintiff conflates the distinct questions of exhaustion and the merits. Whether an act is sufficiently adverse to support a prima facie case is a merits inquiry under *McDonnell Douglas* that a court reaches only after the claim has been exhausted. *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ."); *Almond*, 665 F.3d at 1176 ("As formulated by the [Supreme] Court, the clock starts running when the plaintiff first knew or should have known of his injury, whether or not he realized the cause of his injury was unlawful.").

But a plaintiff is free to plead an adverse action that may or may not survive on the merits, and the clock runs against the act he pled as being the alleged adverse employment action. *See* 29 C.F.R. § 1614.105(a)-(a)(1) ("Aggrieved persons who *believe* they have been discriminated against . . . *must* initiate contact with a Counselor within 45 days of the date of the matter *alleged* to be discriminatory . . . ." (emphasis added)). Here, Plaintiff elected to plead the INSD Investigation as the alleged adverse employment action, *see* UMF L (quoting Doc. 17 ¶

99), and thus the timeliness of his EEO contact is measured against that act, not the separate, consequential act he now wishes he had pled.

Moreover, the Tenth Circuit already explained that:

> [Plaintiff]'s assert[ion] that his January 11 report to the EEO counselor was sufficient to exhaust because it "provided the FBI with information it needed to investigate and attempt to resolve his claims[,]" . . . would effectively nullify the 45-day reporting requirement and our precedent requiring that Title VII exhaustion requirements be enforced when "properly rais[ed]."

Doc. 68-1 at 21-22 (last alteration in original) (quoting Aplt. Br. at 21; *Hickey*, 969 F.3d at 1118). Indeed, Plaintiff's position would instead make timeliness turn on the ultimate merits and let a claimant defeat the exhaustion defense whenever the pled act is arguably non-actionable.[8] *See id.*

**a. <u>Defendant Is Not Precluded From Making Arguments Regarding Whether an Investigation Is or Is Not an Adverse Employment Action</u>**

In arguing that an investigation is not, standing alone, an adverse employment action, Plaintiff also argues that the "FBI reverses its prior position that the [INSD] [I]nvestigation was not a discrete act," Doc. 81 at 6, and that "the FBI should be precluded from now arguing opposite," *id.* at 8. Although Plaintiff does not directly raise the issue of judicial estoppel, he cites, using the "*[s]ee generally*" signal, *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005). Doc. 81 at 8. In *Johnson*, the Tenth Circuit adopted the Supreme Court's three-factor test for judicial estoppel, asking whether: (1) the party's later position is "clearly inconsistent" with its earlier position; (2) the party "succeeded in persuading a court to accept" the earlier position, such that acceptance of the later position would create the perception that a court was misled; and (3) the party asserting the inconsistent position "would derive an unfair advantage or impose an unfair

---

[8] In addition to Plaintiff's position undermining the established affirmative defense, it would improperly incentivize parties to make vague pleadings. *See Evans*, 936 F.2d at 1091.

detriment on the opposing party if not estopped." 405 F.3d at 1068-69 (quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

With that in mind, the Court finds that judicial estoppel does not apply here. The first part of the judicial estoppel test is not satisfied because Defendant's positions are not inconsistent: whether an act is administratively exhausted (a threshold question), is distinct from, and must be determined (where properly raised) before determining whether an act supports a prima facie case (a merits question), and thus a defendant can demand that an alleged act be exhausted before defending against the merits of whether that act actually constitutes an adverse employment action. The second part of the test is not satisfied because "[n]either the District Court nor the Tenth Circuit considered whether initiation of the [INSD] [I]nvestigation, standing alone, is an adverse action as a matter of law." Doc. 83 at 4. Rather, the prior judgment rested on failure to exhaust, *see* Doc. 55 at 26-27; *see also* Doc. 68-1 at 4, 28 (remanding one issue and "otherwise affirm[ing]"), so no court was persuaded to accept the position Plaintiff says is being contradicted. Lastly, the third part of the test is not satisfied because judicial estoppel "is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion," *New Hampshire*, 532 U.S. at 750 (quotation marks and citations omitted), and the Court finds nothing inequitable in requiring a plaintiff to exhaust the act he chose to plead as the alleged adverse employment action.

### 3. **The OPR Letter Was a Separate Consequence of the INSD Investigation and Did Not Render Plaintiff's Report Timely**

Plaintiff argues that his report of the OPR Letter proposing his dismissal exhausted the discrimination claim based on the INSD Investigation, because it "alerted him to the 'discriminatory consequences'" of the INSD Investigation. Doc. 68-1 at 17; *see* Doc. 81 at 1, 9-10. A subsequent consequence of a discrete act does not restart the limitations clock or resurrect

an otherwise time-barred act. *See Ricks*, 449 U.S. at 258 ("[T]he proper focus is upon the time of the *discriminatory act*[ ], not upon the time at which the *consequences* of the act[ ] became most painful." (emphasis in original) (quotation marks and citation omitted)). Nor do the continuing effects of a completed act amount to a continuing violation; the continuing violation doctrine does not apply to discrete acts such as the initiation of an investigation because such discrete acts are individually actionable and must each be separately exhausted. *See Morgan*, 536 U.S. at 113-14; *cf. Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1242 (D. Colo. 2012) ("Plaintiff merely alleges that the consequences of a single discriminatory act (i.e., the termination letter) were ongoing. However, continuing consequences do not demonstrate a continuing violation, as the Court has discussed.").

Plaintiff similarly argues that he could not have contacted an EEO counselor earlier because a discrimination complaint "must be made in good faith and cannot be made in a vacuum," and that only the OPR Letter gave him facts to allege, in good faith, that he was treated worse than two similarly situated white SAs. Doc. 81 at 9-10. *Almond* forecloses this argument:

> [I]n all events, and consistent with the general federal rule, an employee who discovers, or should have discovered, the *injury* (the adverse employment decision) need not be aware of the unlawful *discriminatory intent* behind that act for the limitations clock to start ticking. (Whether and when the limitations clock, once it has started, might be equitably tolled is, of course, another matter. *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)).

665 F.3d at 1177 (emphasis in original); *accord* 29 C.F.R. § 1614.105(a) ("Aggrieved persons who *believe* they have been discriminated against . . . *must* consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." (emphasis added)). As the Tenth Circuit recognized on appeal, Plaintiff's "position would effectively nullify the 45-day reporting requirement and our precedent requiring that Title VII exhaustion requirements be enforced

when 'properly rais[ed].'" Doc. 68-1 at 22 (alteration in original) (quoting *Hickey*, 969 F.3d at 1118).

In conclusion, because the INSD Investigation—the discrete act Plaintiff pled—accrued in March 2021, Plaintiff's report of the consequential OPR Letter did not exhaust it. *Morgan*, 536 U.S. at 113 ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence to support a timely claim.").

**D. <u>Equitable Tolling Does Not Apply</u>**

Having determined the only remaining issue for the Court's consideration is the INSD Investigation—the alleged adverse employment action, which, as set forth above, is distinct from the unpled allegation based on the OPR Letter—and that Plaintiff did not timely exhaust it, the only other way for it to survive Defendant's affirmative defense of exhaustion is equitable tolling. *See Morgan*, 536 U.S. at 102-03, 113.

Although Defendant argues against the potential application of equitable tolling, Doc. 80 at 14-18; *see also* Doc. 83 at 11-12, Plaintiff's Response did not directly raise equitable tolling, *see* Doc. 81. However, Plaintiff argues that "requir[ing] a Title VII plaintiff to exhaust a claim before sufficient facts are available to bring a good faith claim would run contrary to law *and equity*." *Id.* at 6 (emphasis added); *see also id.* at 7 (arguing that requiring EEO contact before the adverse action "would make it virtually impossible for a Title VII plaintiff to bring a claim, so long as the FBI takes long enough in their investigation to cause the exhaustion time period to lapse."); *id.* at 9 (arguing that "[a] Title VII plaintiff cannot be responsible for exhausting a claim

before sufficient facts are available to state a claim in good faith," and that "[a] complaint of discrimination must be made in good faith and cannot be made in a vacuum."). Since equitable tolling is an issue of equity, the Court will consider the applicability of equitable tolling.

District courts have discretion in deciding whether to equitably toll the limitations period, but courts narrowly construe equitable exceptions and thus extend equitable relief sparingly. *See Montoya v. Chao*, 296 F.3d 952, 957-58 (10th Cir. 2002). The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances 'rise to the level of active deception which might invoke the powers of equity to toll the limitations period.'" *Id.* at 957 (quoting *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838-39 (10th Cir. 1979)).

Here, the Court previously held that "Plaintiff does not qualify for equitable tolling." Doc. 55 at 33; *see id.* at 32-36. The Court finds that its previous rationale applies with equal force here. But more specific to the issue before the Court, insofar as Plaintiff pursues his good-faith argument as an issue of equity rather than accrual, it does not warrant equitable tolling. This is because equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose," *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1235 (10th Cir. 1999) (quotation marks and citation omitted). As established, Plaintiff was aware of the INSD Investigation—the discrete act he pled—in March 2021; his asserted inability to allege the FBI's discriminatory purpose until January 2023 goes only to his "direct knowledge of the employer's subjective discriminatory purpose," not to his awareness of the act itself, and so does not toll the 45-day period. *See id.* (quotation marks and citation omitted). Plaintiff's good-faith argument thus fails in equity for the same reason it fails on accrual: the clock ran from his notice of the act, not from the point at which he could prove the FBI's motive. Moreover, Plaintiff identifies no

active deception or extraordinary circumstance that might otherwise justify tolling. *See Montoya*, 296 F.3d at 957-58.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds that Defendant's *Second MSJ* (Doc. 80) is well taken and it is therefore **GRANTED**.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**